UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| EDWARD A. GIVEN,<br><br>    Petitioner,<br><br>v.<br><br>ROBERT MURPHY,<br><br>    Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 05-11663-NMG |

**RESPONDENT ROBERT MURPHY'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS**

Respondent Robert Murphy respectfully submits this memorandum of law in support of his motion to dismiss Petitioner Edward A. Given's petition for a writ of habeas corpus.

In July 2001, Given was adjudicated a "sexually dangerous person" ("SDP") under Mass. Gen. Laws c. 123A, and ordered civilly committed from one day to life pursuant to the statute. As is his right under the statute, in November 2001, Given filed a petition for discharge. But in November 2004, Given was re-adjudicated as an SDP, and as a result, his petition for discharge was denied and he remained committed. Given's habeas petition challenges the admission of certain evidence at his 2001 initial commitment hearing as well as a jury instruction given at that same hearing.

As described in greater detail below, Given's petition must be dismissed for two related, but conceptually distinct reasons: First, this Court lacks subject-matter jurisdiction to adjudicate the claims set forth in Given's petition because he fails to satisfy the "in custody" requirement of 28 U.S.C. § 2254. In particular, Given remains committed—*i.e.*, he is "in custody"—not because of the 2001 initial commitment order he attacks in his petition, but instead, because of

his 2004 re-adjudication as an SDP. In other words, he is "in custody" pursuant to the 2004 judgment in favor of the Commonwealth, not the 2001 judgment he challenges in his petition. Second, even if Given could be deemed "in custody" pursuant to the original order of commitment, his petition fails to present a justiciable Article III case or controversy. More specifically, Given lacks Article III standing because he cannot demonstrate either (i) that his ongoing commitment is fairly traceable to, and thus caused by, the alleged errors at his initial commitment hearing; or (ii) that a favorable decision would result in his release. Hence, for both—or either—of the reasons, Given's petition must be dismissed.[1]

## BACKGROUND

**I.   THE MASSACHUSETTS SDP STATUTE.**

Given is currently in custody at the Bridgewater State Hospital, having been civilly committed as a "sexually dangerous person" under Mass. Gen. Laws c. 123A. The statute, as currently enacted, is described in detail in *Commonwealth v. Bruno*, 432 Mass. 489 (2000). For the Court's convenience, Respondent provides herein a brief description of the statute, drawn from *Bruno* except where otherwise noted.

On September 10, 1999, the Massachusetts Legislature amended Mass. Gen. Laws c. 123A by providing for civil commitment from one day to life for persons adjudicated as an SDP. Prior to these amendments, for a period of almost ten years, no new SDP classifications and no new commitments were permitted. The 1999 amendments established a new definition of

---

[1] Since Given's petition must be dismissed for the reasons stated herein, in the interest of economy, Respondent will not address any additional affirmative defenses or the merits of Given's petition. Should the Court deny Respondent's motion and permit Given to proceed, Respondent respectfully requests the opportunity to file a proposed scheduling order for the parties to submit further briefing.

SDP as well as procedures for adjudicating persons as sexually dangerous. The statute defines an SDP as:

> any person who has been (i) convicted of or adjudicated as a delinquent juvenile or youthful offender by reason of a sexual offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in sexual offenses if not confined to a secure facility; (ii) charged with a sexual offense and was determined to be incompetent to stand trial and who suffers from a mental abnormality or personality disorder which makes such person likely to engage in sexual offenses if not confined to a secure facility; or (iii) previously adjudicated as [sexually dangerous] by a court of the commonwealth and whose misconduct in sexual matters indicates a general lack of power to control his sexual impulses, as evidenced by repetitive or compulsive sexual misconduct by either violence against any victim, or aggression against any victim under the age of 16 years, and who, as a result, is likely to attack or otherwise inflict injury on such victims because of his uncontrolled or uncontrollable desires.

Mass. Gen. Laws c. 123A, § 1. The statute also provides detailed definitions for some of the terms used in the definition of an SDP, such as "mental abnormality," "personality disorder," and "sexual offense." *Id.*

The statute requires "[a]ny agency with jurisdiction" over persons convicted of a sexual offense (generally, a Massachusetts Correctional Institution) to "notify in writing the district attorney of the county where the offense occurred and the attorney general six months prior to the release of such person." Mass. Gen. Laws. c. 123A, § 12(a). If the district attorney or Attorney General then "determines that the prisoner . . . is likely to be a sexually dangerous person as defined in section 1 [of c. 123A]," either "may file a petition alleging that the prisoner . . . is a sexually dangerous person and stating sufficient facts to support such allegations in the superior court." Mass. Gen. Laws. c. 123A, § 12(b).

3

The court must then "determine whether probable cause exists to believe that the person named in the petition is a sexually dangerous person." Mass. Gen. Laws c. 123A, § 12(c). If the court finds probable cause to believe that the person is sexually dangerous, he may be committed "for a period not exceeding [sixty] days for the purpose of examination and diagnosis under the supervision of two qualified examiners [as defined under Mass. Gen. Laws c. 123A, § 1]." Mass. Gen. Laws c. 123A, § 13(a). The qualified examiners must then "file with the court a written report of the examination and diagnosis and their recommendation of the [person's] disposition." Id. The person may retain his own expert, and if indigent, "the court shall provide for such qualified examiner." Mass. Gen. Laws c. 123A, § 13(d).

Next, the district attorney or Attorney General "may petition the court for a trial . . . to determine whether [the] person is a sexually dangerous person." Mass. Gen. Laws c. 123A, § 14(a). To prepare for trial, the person is entitled to the assistance of counsel and may retain "experts or professional persons to perform an examination on his behalf" and to examine "all relevant medical and psychological records" concerning the person. Mass. Gen. Laws c. 123A, § 14(b).

By statute, the trial "shall be by jury unless affirmatively waived by the person named in the petition." Mass. Gen. Laws c. 123A, § 14(a). The statute directs that certain evidence "shall be admissible at the trial," including probation records, psychiatric and psychological records, police reports relating to the person's prior sexual offenses, incident reports arising from the person's incarceration and custody, and "any other evidence tending to show that such person is or is not a sexually dangerous person." Mass. Gen. Laws c. 123A, § 14(b). Notably, the Commonwealth bears the burden of proof, and must prove "beyond a reasonable doubt" that the person is sexually dangerous in order to carry its burden. Mass. Gen. Laws c. 123A, § 14(d). If

4

the Commonwealth is able to meet this heavy burden, the person is committed to a treatment center "for an indeterminate period of a minimum of one day and a maximum of such person's natural life until discharged pursuant to the provisions of [Mass. Gen. Laws c. 123A, § 9]." *Id.*

A person committed under the statute "shall be entitled to file a petition for examination and discharge once in every twelve months." Mass. Gen. Laws c. 123A, § 9. The resulting trial is similar to an initial commitment hearing in almost all material respects. Either the petitioner or the Commonwealth may demand a jury trial.[2] *Id.* The committed person has a right to counsel, including the right to appointed counsel if he wishes. *Id.* Prior to trial, as with an initial commitment trial, the committed person must be "examined by two qualified examiners." *Id.* The examiners are obligated to conduct "examinations, including personal interviews," of the committed person, and must file written reports of their "examinations and diagnoses, and their recommendations for the [committed person's] disposition." *Id.* The evidence admissible at a discharge trial is similar to that admissible in an initial commitment trial. *Id.*; Mass. Gen. Laws c. 123A, § 14(b) (providing that, among other things, juvenile and adult court probation records, psychiatric and psychological records, and "any other evidence that tends to indicate" that the person is sexually dangerous are admissible in both types of proceedings). And, like the initial commitment trial, the Commonwealth again bears the burden of proving beyond a reasonable doubt that the person remains an SDP. *Id.*; *see also In re McHoul*, 445 Mass. 143, 155-56 (2005) (approving jury instruction at section 9 hearing directing jury that "the Commonwealth had the

---

[2]   A discharge hearing varies slightly in this respect. At an initial commitment hearing, the alleged sexually dangerous person may choose whether or not the case is tried to a jury. Mass. Gen. Laws c. 123A, § 14(a). At a discharge hearing, either party may demand a jury trial, even if the other party does not consent. Mass. Gen. Laws c. 123A, § 9; *In re Ready*, 63 Mass. App. Ct. 171, 179-80 (2005). As noted below, this distinction has no impact here, as Given received a jury trial at both his 2001 initial commitment hearing and (at his request) at his 2004 discharge hearing.

burden of proving 'beyond a reasonable doubt' that the petitioner remains sexually dangerous today"). If the Commonwealth fails to meet this burden, the person "shall" be discharged. Mass. Gen. Laws c. 123A, § 9.

## II. PRIOR PROCEEDINGS[3]

### A. Given's Criminal Offenses

Given was convicted of indecent assault and battery on a child under fourteen in 1984, and was sentenced to probation with counseling. *See Commonwealth v. Given*, 59 Mass. App. Ct. 390, 391 (2003) ("*Given I*") (describing Given's criminal history). In 1991, Given pleaded guilty to offenses set forth in two separate sets of indictments, one involving sexual assaults on his ten-year-old stepdaughter and nine-year-old stepson, and the other involving an eleven-year-old boy and a twelve-year-old mentally retarded girl. *Id.* Given was sentenced to concurrent committed sentences of nine to twelve years, which he served. *Id.*

### B. Given's Initial Commitment Hearing

Shortly before his scheduled release, in November 2000, the Commonwealth filed a petition to commit Given as an SDP pursuant to Mass. Gen. Laws c. 123A. *Id.*; *see also* Worcester Superior Court Civil Docket No. WOCV2000-02220 (attached as Exhibit A to the Katz Declaration). The Commonwealth's petition was tried to a jury, and "[a]t the conclusion of the trial, the jury rendered a special verdict finding that Given was a sexually dangerous person, and the trial judge ordered him committed to the treatment center for an indefinite period, from one day to life." *Commonwealth v. Given*, 441 Mass. 741, 743 (2004) ("*Given II*"); *see also* Katz Decl., Exh. A at 3 (noting that judgment on jury verdict was entered on July 13, 2001).

---

[3]  The following facts are drawn from the docket entries and judicial opinions in Petitioner's state-court proceedings, some of which are attached as exhibits to the Declaration of Scott A. Katz (the "Katz Declaration" or "Katz Decl."), filed herewith.

6

Given appealed, and in a published decision issued September 24, 2003, the Massachusetts Appeals Court reversed the judgment and set aside the jury's special verdict, on the ground that certain evidence was erroneously admitted at trial, and that the error was not harmless. *Given I*, 59 Mass. App. Ct. at 393-96. The Commonwealth sought further appellate review, and the Massachusetts Supreme Judicial Court ("SJC") held, contrary to the finding by the Appeals Court, that the trial judge "committed no error." *Given II*, 441 Mass. at 743-49. As a result, the SJC's published decision, issued May 20, 2004, reinstated the jury's verdict and affirmed the judgment of the trial court. *Id.* at 749.

### C. Given's Petitions for Discharge

On November 16, 2001, while pursuing an appeal of his initial commitment, Given filed a petition for discharge under Mass. Gen. Laws c. 123A, § 9. *See* Worcester Superior Court Civil Docket No. WOCV2001-02369 (attached as Exhibit B to the Katz Declaration). Both Given and the Commonwealth requested a trial by jury. *Id.* at 3. Given's petition was tried to a jury in November 2004[4]—following resolution of his appeal of his initial commitment. *Id.* at 4. The jury returned a verdict for the Commonwealth, and a result, a judgment was entered holding that Given "remain[ed] classified as a sexually dangerous person," and he remained committed. *Id.* Given apparently has not appealed this judgment, as no notice of appeal appears on the docket. *Id.* at 4-5.

Subsequently, on May 31, 2005, Given filed another petition for discharge under Mass. Gen. Laws c. 123A, § 9. *See* Worcester Superior Court Civil Docket No. WOCV2005-00986 (attached as Exhibit D to the Katz Declaration). Given's petition was transferred to the Unified

---

[4] On March 2, 2004, Given and the Commonwealth filed a joint motion to continue the trial relating to his discharge petition pending resolution of Given's appeal of his initial commitment by the Massachusetts SJC. *See* Joint Motion to Continue Trial (attached as Exhibit C to the Katz Declaration). The motion was allowed. *Id.*

7

Session Suffolk Superior Court Criminal Division. *Id.* As of the date of this memorandum, his petition remains pending in the Suffolk Superior Court. *See* Suffolk Superior Court Criminal Docket No. SUCR2005-10405 (attached as Exhibit E to the Katz Declaration).

### D. Given's Instant Habeas Petition

It appears that Given filed his habeas petition on or about July 12, 2005.[5] In his petition, Given asserts two claims which he contends entitles him to habeas relief. More specifically, Given claims that:

(1) "The judgment of commitment was obtained by the introduction of unreliable hearsay evidence in violation of the petitioner's right to due process of law, including the right to confront and cross examine witnesses against him"; and

(2) "The judgment of commitment was obtained with [an] unconstitutionally vague and overly broad definition of 'likely to engage in sexual offenses' in violation of the petitioner's right to due process of law.

Given's Petition at 5. Notably, both claims are based only on alleged trial errors during his 2001 initial commitment hearing.

## ARGUMENT

### I. GIVEN IS NOT "IN CUSTODY" PURSUANT TO THE JUDGMENT HE CHALLENGES IN HIS PETITION.

Given's habeas petition, brought pursuant to 28 U.S.C. § 2254, challenges his initial commitment, judgment on which was entered July 13, 2001. Katz Decl., Exh. A. It is axiomatic that "[t]he federal habeas statute gives the United States district courts jurisdiction to entertain petitions for habeas relief only from persons who are 'in custody in violation of the Constitution

---

[5] Under the so-called "prisoner mailbox rule," if a *pro se* prisoner litigant uses the prison system for forwarding legal mail to the district court, and demonstrates through documentation the date upon which the petition was deposited in the prison's internal mail system, then that date is taken as the date of filing. *Morales-Rivera v. United States*, 184 F.3d 109, 111 (1st Cir. 1999). In this case, Given's petition does not indicate whether he used the prison system for forwarding and recording legal mail, and if so, when his petition was given to prison authorities for mailing.

8

or laws or treaties of the United States.'" *Maleng v. Cook*, 490 U.S. 488, 390 (1989) (quoting 28 U.S.C. § 2241(c)(3)) (emphasis added); *see also* 28 U.S.C. § 2254(a). Accordingly, in order for a federal court to have jurisdiction to adjudicate a petition, a habeas petitioner must allege, among other things, that at the time his petition is filed, he is in custody pursuant to the state-court judgment under attack in his petition. *Spencer v. Kemna*, 523 U.S. 1, 6 (1998); *Carafas v. LaVallee*, 491 U.S. 234, 238 (1968); *Norlander v. Plasky*, 964 F. Supp. 39, 42 (D. Mass. 1997) ("Custody is tested at the time of filing the petition."). Thus, for example, a habeas petitioner fails to satisfy the "in custody" requirement if the sentence served pursuant to a judgment has fully expired at the time his petition is filed. *E.g.*, *Maleng*, 490 U.S. at 490-91 ("We have interpreted the statutory language as requiring that the habeas petitioner be 'in custody' under the conviction or sentence under attack at the time his petition is filed."); *Lefkowitz v. Fair*, 816 F.2d 17, 19 (1st Cir. 1987); *Tinder v. Paula*, 725 F.2d 801, 803 (1st Cir. 1984).

In this case, Given challenges the judgment which resulted in his 2001 initial commitment. But he is not "in custody" pursuant to that judgment. Instead, he remains committed pursuant to the November 2004 judgment which adjudged that he remained an SDP. Katz Decl., Exh. B. Accordingly, this case is not at all like, for example, *Garlotte v. Fordice*, 515 U.S. 39 (1995). In that case, the Supreme Court held that a prisoner incarcerated under consecutive sentences, one of which had been fully served, satisfied the "in custody" requirement, and could challenge his fully-served criminal sentence because the prior sentence "continue[d] to postpone the date he would be eligible for [release]" under the unexpired sentence. 515 U.S. at 47 & n.5 ("Invalidation of Garlotte's marijuana conviction would advance the date of his eligibility for release from present incarceration. Garlotte's challenge, which will shorten his term of incarceration if he proves unconstitutionality, implicates the core purpose of

9

habeas review. We therefore hold that Garlotte was 'in custody' under his marijuana conviction when he filed his federal habeas petition."). Here, in contrast, invalidation of Given's 2001 initial commitment would not have a similar effect; such an action would have no impact on his release from civil commitment, because he would remain committed from one day to life pursuant to the judgment entered at his 2004 discharge trial. Hence, Given is not "in custody" pursuant to the judgment he attacks in his petition—the 2001 initial commitment—and therefore, the Court is without subject-matter jurisdiction to adjudicate his petition, as several California courts have already recognized in the context of SDP-type civil commitments. *See Burris v. Hunter*, 290 F. Supp. 2d 1097, 1100-01 (C.D. Cal. 2003) (holding petitioner was not "in custody" pursuant to civil commitment order challenged in petition where term of commitment had expired: "While involuntary commitment pursuant to [a sexually violent predator] commitment order satisfies the 'in custody' requirement for purposes of seeking habeas relief, petitioner is not currently 'in custody' under the commitment order he is attacking in his Petition.") (citations omitted); *Dacayana v. Mayberg*, No. CV-03-5554TJH(RC), 2004 WL 792714 (C.D. Cal. March 11, 2004) (holding habeas petitioner "was not in custody under the 2000 civil commitment, which he challenges, when he filed the pending matter . . . to the contrary, he is in custody under a completely different civil commitment order"); *Rose v. Nelson*, No. CV-00-4366 CRB(PR), 2001 WL 1352889 (N.D. Cal. Oct. 25, 2001) ("The two-year sentence for petitioner's April 13, 1998 commitment expired on April 13, 2000, months before he filed the instant petition on November 21, 2000. Petitioner is no longer in custody under that sentence for the purpose of seeking federal habeas relief.").[6] For this reason alone, Given's petition should be dismissed.

---

[6]     Respondent acknowledges that another judge of this Court rejected a similar argument in

**II.   GIVEN'S PETITION DOES NOT PRESENT A JUSTICIABLE ARTICLE III CASE OR CONTROVERSY.**

Even if this Court were to conclude that Given is "in custody" pursuant to his initial 2001 commitment order for purposes of the habeas statute, his petition still must be dismissed, as he lacks Article III standing, and therefore, his petition fails to present a justiciable Article III case or controversy.  It is well-established that "[f]ederal courts are courts of limited jurisdiction.  They are not empowered to offer advisory opinions.  Thus, standing to sue is an indispensable component of federal court jurisdiction."  *Osediacz v. City of Cranston*, 414 F.3d 136, 139 (1st Cir. 2005) (citations omitted).

As the First Circuit recently recognized, "[t]he constitutional core of standing requires that a plaintiff make a tripartite showing: [he] must demonstrate that [he] has suffered an injury in fact, that [his] injury is fairly traceable to the disputed conduct, and that the relief sought promises to redress the injury sustained."  *Osediacz* 414 F.3d at 139 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  And significantly, it is the party seeking to invoke the

---

*Dutil v. Murphy*, No. 03-10925-RGS, "essentially for the reasons stated in petitioner's response" to Respondent's motion to dismiss.  Docket Entry # 11, *Dutil v. Murphy*, No. 03-10925-RGS ("Order," dated March 8, 2004) (Stearns, J.).  In that case, the petitioner (represented by the same counsel as is Given in this case) argued that he could <u>always</u> challenge his initial commitment on habeas because the indeterminate length of civil commitment under the statute meant that the petitioner was <u>always</u> in custody pursuant to his original commitment order.  On his view, discharge hearings serve only as a determination of whether an initial commitment should end, and are not themselves new judgments which submit a person to further commitment.  But, if that were the case, habeas review would <u>never</u> be available for alleged constitutional errors at a discharge hearing because the petitioner would be "in custody" pursuant to only the initial order of commitment, and not the judgment at the discharge hearing.  Indeed, the petitioner in *Dutil* argued that such the judgment at a discharge hearing "is not a new commitment," but instead "determines only whether the existing indeterminate commitment should end."  Docket Entry # 10, *Dutil v. Murphy*, No. 03-10925-RGS ("Petitioner's Response to Respondent's Memorandum in Support of Motion to Dismiss".  In short, the argument advanced by the petitioner in *Dutil* allows committed individuals to "speak now" (*i.e.*, challenge their initial commitment on habeas) and then requires them to "forever hold their peace" (*i.e.*, forecloses them from challenging subsequent denials of discharge).  The Court should reject an interpretation of the "in custody" requirement that would require this result.

11

federal court's jurisdiction—the petitioner Given in this case—who bears the burden of pleading and proof as to each of these requirements. *See id.* Here, Respondent concedes that Given's involuntary civil commitment meets the "injury-in-fact" requirement, but as described below, Given cannot show that his injury (his ongoing involuntary commitment) "is fairly traceable to the disputed conduct" (the alleged errors at his 2001 initial commitment hearing), nor that the relief sought (invalidation of his 2001 order of commitment) "promises to redress the injury sustained" (his ongoing involuntary commitment). That Given is currently committed owes to his re-adjudication as an SDP in 2004, not his initial adjudication as an SDP in 2001.

      A.      **Given's Continued Commitment is Not Fairly Traceable to His 2001 Initial Commitment Hearing.**

The causation requirement to establish Article III standing is not easily satisfied. *See, e.g., Donahue v. City of Boston*, 304 F.3d 110, 115 (1st Cir. 2002) ("[T]he plaintiff must show a causal connection between the asserted injury and the challenged action of the defendant; this causal connection cannot be overly attenuated."); *see also Allen v. Wright*, 468 U.S. 737, 752 (1984) (directing courts to ask in determining standing "[i]s the line of causation between the illegal conduct and injury too attenuated?"). Here, as noted, Given was originally committed following an initial hearing in July 2001. Subsequently, he was re-adjudicated as an SDP in November 2004—eight months <u>before</u> filing his habeas petition. A common-sense understanding of these two facts necessarily leads to the conclusion that the 2004 discharge hearing, not the 2001 initial commitment hearing, is the cause of Given's injury in fact (his continued involuntary commitment). If, for example, Given had been adjudicated not to be an SDP at his discharge hearing, he would have been released. His ongoing commitment is "fairly traceable" to that judgment, not his 2001 initial order of commitment. Accordingly, Given

12

plainly fails to satisfy the causation requirement, and thus, lacks Article III standing to assert the claims set forth in his petition.

      **B.      The Relief Given Seeks Would Not Redress His Injury.**

Similarly, the relief Given seeks—a ruling that his 2001 order of commitment violates the Constitution because of the allegedly constitutional defects at his commitment hearing—would not redress his injury because he would remain committed subject to his 2004 adjudication as an SDP. The Supreme Court has made clear that "it must be <u>likely</u>, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (internal quotation marks omitted) (emphasis added). This means that the person seeking relief must "benefit in a tangible way from the court's intervention." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103 n.5 (1998). To be sure, this requirement generally does not present a substantial obstacle in habeas cases. In the typical habeas action, a favorable ruling generally results in redress of the alleged injury: the custody of the petitioner (usually an individual held in custody pursuant to a criminal conviction) becomes invalid because of the constitutional defects associated with the petitioner's criminal conviction. Here, in contrast, any constitutional defects at Given's 2001 initial commitment hearing would not render his custody invalid; he would remain lawfully committed pursuant to his 2004 re-adjudication as an SDP.[7]

---

[7]     In addition, the true relief generally afforded a successful habeas petitioner—a new trial—would make little sense here as a practical matter. A criminal defendant can be given a new trial (free of constitutional defect) to answer the same question at issue in his original trial: did he commit the crime charged? Here, a new trial would make little sense. The issue at a hearing under Mass. Gen. Laws c. 123A is whether, <u>at the time of the hearing</u>, the person is an SDP. Giving Given a new trial now, in 2006, would result in an inquiry as to either (a) whether he was a sexually dangerous person in 2001—an inquiry completely at odds with the purpose of the statute, and impossible to square with his 2004 adjudication as an SDP; or (b) whether he is a sexually dangerous person now—the same inquiry that will be made when his current petition for discharge goes to hearing. This scenario serves to demonstrate, in practical terms, why Given does not have standing.

### C.  Existing Federal Case Law Supports a Finding that Given Lacks Standing.

While the Article III issues raised by Given's petition are relatively novel, this Court does not write on a blank slate.  The Ninth Circuit has addressed similar issues of standing and mootness with respect to California's Sexually Violent Predator Act ("SVPA").[8]  *See Jackson v. California Dep't of Mental Health*, 399 F.3d 1069 (9th Cir. 2005), *amended on pet'n for reh'g*, 417 F.3d 1029 (9th Cir. 2005); *see also Carty v. Nelson*, 426 F.3d 1064 (9th Cir. 2005); *Hubbart v. Knapp*, 379 F.3d 773 (9th Cir. 2004).  Of these, *Jackson* is most relevant here.

In *Jackson*, the habeas petitioner was ordered committed under the SVPA.  "When his term expired in 1999, [the petitioner] voluntarily recommitted himself for an additional two-year period.  After his voluntary recommitment, Jackson filed the habeas petition at issue [challenging his expired commitment] in February 2000."  *Jackson*, 399 F.3d at 1071.  As the Ninth Circuit noted, "Jackson's initial SVPA term expired <u>before</u> he brought his federal habeas petition.  When the district court first considered his case, Jackson was no longer confined under the order he claims [was invalid in his habeas petition]."  *Id.* at 1072 (emphasis in original).  Accordingly, the Ninth Circuit concluded that Jackson "clearly could not rely on his expired SVPA term for standing to raise [his habeas] claim."  *Id.* at 1073.  Given's situation is directly analogous: Given's 2004 re-adjudication as an SDP is, for the purposes of an Article III standing inquiry, the functional equivalent of the expiration of Jackson's initial two-year term of commitment.  Accordingly, like the petitioner in *Jackson*, Given lacks Article III standing in this case.

---

[8]  California's SVPA differs from Mass. Gen. Laws c. 123A in that it provides for a two-year term of civil commitment, thus requiring the state to bring a new petition for commitment every two years.  *See generally* Cal. Welf. & Inst. Code § 6600 *et seq.*  In contrast, as noted, Mass. Gen. Laws c. 123A provides for a term of commitment from one day to life, and allows committed persons to petition for discharge "once in every twelve months."  Mass. Gen. Laws c. 123A, § 9.

The Ninth Circuit's decision in *Hubbart* does not suggest a different result. The issue in *Hubbart* "was mootness—whether, after the case had been brought, something happened to cause Hubbart to lose his continuing interest in the case." *Jackson*, 399 F.3d at 1072; *see Hubbart*, 379 F.3d at 777-78. In that case, the respondent argued that because petitioner Hubbart's two-year term of commitment expired while his habeas petition was pending (and he had since been recommitted for a new two-year term of commitment), Hubbart's petition was moot. The Ninth Circuit rejected this argument, and held that Hubbart's petition had not become moot "because his claims [were] capable of repetition yet evading review." *Id.* This conclusion was based largely on the two-year term of commitment provided by California of law. The Ninth Circuit recognized that "it is 'almost certain' that a state detainee under California's civil commitment scheme for sexually violent predators will be unable to exhaust state remedies and 'fully litigate' a habeas petition in federal courts within two years." *Id.* at 778. Accordingly, if the Court were to hold that a such a petition became moot because of the expiration of the two-year term, no person committed under the SVPA would ever be able to fully litigate a habeas petition challenging their commitment.

Here, of course, the issue is standing, not mootness; the issue is whether Given had standing to bring his petition when it was filed, not whether something happened afterward to cause his petition to become moot, as in *Hubbart*. Indeed, *Jackson* distinguished *Hubbart* on this very ground. Whereas "Jackson's initial SVPA term expired <u>before</u> he brought his federal habeas petition," Hubbart's "initial SVPA term expired two weeks <u>after</u> he petitioned the district court for habeas relief." *Jackson*, 399 F.3d at 1072 (citing *Hubbart*, 379 F.3d at 777) (emphases in original). Thus, the petitioner in *Hubbart* "clearly had standing to bring the case; at the time he filed his habeas petition, he was confined under an order he claimed the state lacked

15

jurisdiction to enter." *Jackson*, 399 F.3d at 1072. But in *Jackson*, as noted, because the petitioner "was no longer confined under the order he claims [was invalid in his habeas petition], he "clearly could not rely on his expired SVPA term for standing to raise [his habeas] claim." *Id.* at 1072-73. Moreover, the "capable of repetition yet evading review" doctrine, which the Ninth Circuit relied on in *Hubbart*, is an exception only to mootness; it does not apply where a plaintiff lacks standing. *See Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000) ("[I]f a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review will not entitle the complainant to a judicial forum."); *Jackson*, 399 F.3d at 1073 (noting that exception does not apply to standing).

In addition, the concern that motivated the Ninth Circuit to find the exception applicable in *Hubbart*—the prospect of persons committed under California's SVPA never receiving habeas review—is not present for persons committed pursuant to Mass. Gen. Laws c. 123A. The event which here deprives Given of standing is his 2004 re-adjudication as an SDP—an event which Given himself precipitated by filing a discharge petition. Given could have instead opted to seek habeas relief relating to his 2001 initial commitment after exhausting state remedies, and would have had standing to seek habeas relief if he had. His decision not to do is not surprising, of course, since the relief he would obtain if such a petition were granted would effectively be the same relief he got by filing a discharge petition: a new hearing to determine if he was an SDP.

The Ninth Circuit's decision in *Carty* is similarly inapposite. There, as in *Hubbart*, the committed person had standing when he filed his petition, and the question was only whether his subsequent release made his petition moot. *See Carty*, 426 F.3d at 1071-72. The Ninth Circuit held that the committed person's petition had not become moot, even in spite of his release, because he continued to suffer from collateral consequences stemming from his commitment—

16

namely, the prospect of "incarceration for up to a year if he fail[ed] to verify his residence and employment record every ninety days." *Id.* at 1071.  Here, Given can make no such claim, as he is not subject to any similar collateral consequences as a result of his commitment, and even if he were, such consequences would still attach as a result of his 2004 adjudication as an SDP.  Accordingly, the existing law on this issue—especially *Jackson*—strongly suggests that, as demonstrated above, Given lacks Article III standing to challenge his 2001 initial order of commitment.

## CONCLUSION

For the foregoing reasons, the Court should allow Respondent's motion, and dismiss Given's petition for a writ of habeas corpus.

Respectfully submitted,

ROBERT MURPHY,

By his attorney,

THOMAS F. REILLY
ATTORNEY GENERAL

 /s/ Scott A. Katz
Scott A. Katz (BBO # 655681)
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts  02108
(617) 727-2200, ext. 2833

Dated:  January 20, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and that a true copy of the above document was also served upon David B. Hirsch, counsel for petitioner Edward A. Given in this matter, by first-class mail, postage prepaid, on January 20, 2006.

/s/ Scott A. Katz
Scott A. Katz
