UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| EDWARD A. GIVEN<br>Petitioner,<br><br>v.<br><br>ROBERT MURPHY,<br>Respondent | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION<br>NO. 05-11663-NMG |

**PETITIONER'S RESPONSE TO RESPONDENT'S
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

1. **Contrary to the Commonwealth's argument, Mr. Given remains in custody pursuant to his original commitment.**

    (a) <u>This Court must abide by both statutory language and the rulings of the Massachusetts Courts that Given's original commitment has not been superceded by his subsequent failure to gain release at a G.L. c. 123A § 9 discharge hearing</u>.

    The Commonwealth claims that this Court lacks subject-matter jurisdiction herein because Given is in custody "not because of the 2001 initial commitment order he attacks in his petition, but instead, because of his 2004 re-adjudication as an SDP." Commonwealth's Memorandum at 1-2. But language used by the Commonwealth itself shows why its motion must fail. As the Commonwealth states: "In 2001, Given was adjudicated a sexually dangerous person ("SDP") under Mass.Gen.Laws c. 123A, and ordered civilly committed from one day to life pursuant to the statute." *Id.* at 1. The Commonwealth's choice of words tracks the language of G.L. c. 123A General Laws § 14(d):

    > If after the trial, the jury finds unanimously and beyond a reasonable doubt that the person named in the petition is a sexually dangerous person, such person shall be

> committed to the treatment center ... for an indeterminate period of a minimum of one day and a maximum of such person's natural life until discharged pursuant to the provisions of section 9.

Since Given was denied discharge at his 2004 § 9 hearing, he remains committed pursuant to his initial commitment, and will so remain until discharged.

The Commonwealth's claim to the contrary is further contradicted by state case law. In re Trimmer, 375 Mass. 588, 590-91 (1978), where the Court ruled:

> "In construing the statute we are also mindful of its purposes which are to ascertain who are sexually dangerous persons for the protection of society, and to cure and rehabilitate them as soon as possible." LaMorre v. Superintendent of Bridgewater State Hosp., 347 Mass. 534, 538 (1964). The Legislature determined that an indefinite commitment from one day to life is necessary to accomplish these objectives. See G. L. c. 123A, § § 5, 6.
> Because of this allowed period of commitment, the Legislature provided mechanisms for the redetermination whether a person was sexually dangerous.

Trimmer clarifies that a "redetermination" in the context of an existing commitment is not a new commitment: it determines only whether the existing indeterminate commitment should end.

The Commonwealth's position is further refuted by Redgate, petitioner, 417 Mass. 799 (1994), where the SJC overturned the results of a G.L.c. 123A § 9 trial on grounds that the original commitment was constitutionally defective. There would have been no basis for the decision in Redgate had the § 9 verdict constituted a new commitment. Here, as in Redgate, the original commitment remains intact and its constitutionality remains in issue even after a subsequent Section 9 discharge trial.

Finally, in Dutil, petitioner, 437 Mass. 9 (2002), a person committed under ch. 123A challenged the constitutionality of the Statute in a state *habeas* petition. The Supreme Judicial Court noted:

> Dutil filed petitions for discharge pursuant to G. L. c. 123A, § 9, in 1996 and 1997. A judge determined that Dutil remained a sexually dangerous person after a hearing on the 1996 petition, and Dutil withdrew the 1997 petition before the scheduled hearing. In 1998, he filed another petition for discharge, followed by a petition for habeas corpus. It is that habeas corpus petition that is presently before us. Although it is unclear from his briefs and oral arguments, it appears that Dutil's challenge is based on his original commitment in 1988.

*Id.* at 13. The Court thereupon adjudged the claim on the merits, and found against the petitioner. Under Massachusetts law, "[t]he great purpose of the writ of habeas corpus is the immediate delivery of the party deprived of personal liberty." Sheriff of Suffolk County v. Pires, 438 Mass. 96, 100 (2002) (quoting Wyeth v. Richardson, 76 Mass. 240, 10 Gray 240, 241 (1857)). The writ is not available unless the prisoner is eligible for release at the time of the hearing. *Id.* (quoting Pina v. Superintendent, Mass. Correctional Inst., Walpole, 376 Mass. 659, 665 (1978)). The Court thus could not have ruled on the merits of Dutil's petition had his original commitment been superceded, as the Commonwealth claims here, by subsequent § 9 findings that he remained sexually dangerous. The state courts and the state legislature have spoken. This court must abide by their construction of state law. Minnesota ex rel. Pearson v. Probate Court, 309 U.S. 270, 273 (1940); Mishkin v. New York, 383 U.S. 502, 506 (1966).

> (b)  Cases cited by the Commonwealth interpreting the California Sexually Violent Persons Act merely demonstrate the difference between the California and Massachusetts statutes, and do not provide grounds to override the plain meaning of G.L. c. 123A § 14(d).

The Commonwealth relies on several cases involving the California "Sexually Violent Predators Act" as a basis for ignoring the plain language of the Massachusetts statute. But the differences between the two laws clearly illustrate why the Commonwealth's motion must fail. California Welf. & Inst. Code § 6604 provides, in pertinent part:

> If the court or jury determines that the person is a sexually violent predator, the person shall be committed for two years to the custody of the State Department of Mental Health for appropriate treatment and confinement in a secure facility designated by the Director of Mental Health, and the person shall not be kept in actual custody longer than two years unless a subsequent extended commitment is obtained from the court incident to the filing of a petition for extended commitment under this article or unless the term of commitment changes pursuant to subdivision (e) of Section 6605.

In other words, the California statute provides for a definite period of commitment, following which the individual must be released absent the filing of a new petition. Indeed, the Commonwealth quotes Rose v. Nelson, No. CV-00-4366 CRB(PR) (N.D.Cal. 2001) to the effect that commitment under the California statute lasts for a "two-year sentence," which had already expired.

Commitment under the Massachusetts statute, by contrast, it is wholly indefinite.[1] It lasts a lifetime, unless a factfinder finds beyond a reasonable doubt at some time that the individual is no longer sexually dangerous. A commitment which lasts until the person is discharged cannot plausibly be construed as lasting only until such time the person is granted a discharge hearing.

The First Circuit has repeatedly emphasized that "Our general rules of statutory interpretation dictate a narrow course for us on review: unless the statutory language is

---

[1] In Kansas v. Hendricks, 521 U.S. 346, 364, the Supreme Court construed the Kansas SVP statute as "potentially indefinite," explaining that "[t]he maximum amount of time an individual can be incapacitated pursuant to a single judicial proceeding is one year. § 59-29a08. If Kansas seeks to continue the detention beyond that year, a court must once again determine beyond a reasonable doubt that the detainee satisfies the same standards as required for the initial confinement. Ibid." *Id.* Actually, Kans.S.A. § 59-29a08, then as now, mandated only an annual hearing to determine whether "probable cause exists to believe that the person's mental abnormality or personality disorder has so changed that the person is safe to be placed in transitional release." *Id.* at (c). Only if that threshold is met was the individual entitled to a new trial at which the reasonable doubt standard applied. As read by the Court, however, the statute considered in Hendricks is mores similar to the California statute than the one considered here. The Massachusetts statute is not only "potentially," but wholly indefinite.

4

ambiguous, we generally are limited by its plain meaning." United States v. Fazal-Ur-Raheman-Fazal, 355 F.3d 40, 46 (2004); quoting Campanale & Sons, Inc. v. Evans, 311 F.3d 109, 117 (1st Cir. 2002). While this rule is not absolute, Cablevision, Inc. v. Public Improvement Comm'n, 184 F.3d 88, 101 (1st Cir. 1999), the Commonwealth presents no valid reason for disregarding it here.[2]

2.  **Even were this Court to hold that Given is currently is custody pursuant to his failed 2004 petition for release rather than his initial 2001 commitment, he has standing under Art. III of the Constitution to petition for *habeas corpus* in this Court in that his current commitment is "directly traceable" to the original commitment challenged herein.**

As demonstrated above, Given remains in custody pursuant to his original commitment. His petition for *habeas corpus* challenging that commitment therefore clearly presents a case in controversy as required by Art. III.

---

[2]The Commonwealth argues that if commitment is viewed, as the statute demands, as indefinite, "habeas review would never be available for alleged constitutional errors at a discharge hearing because the petitioner would be 'in custody' pursuant to only the initial order of commitment, and not the judgment at the discharge hearing." Commonwealth's Memo. at 11, n.6. It provides no basis for this conclusion. The Commonwealth may be referring to the one-year time limit for filing habeas corpus petitions imposed by 28 U.S.C. 2244(d)(1). But the fact that the original commitment remains intact until the individual's release does not prevent habeas challenges to subsequent unconstitutional denials of his right to release from that judgment at a G.L. c. 123A § 9 hearing.

Further, even parole decisions can be grounds for *habeas* relief under under § 2244(d)(1)(D), even though they are not final orders since the date on which parole is denied constitutes the date on which a new factual predicate for the petitioner's *habeas* claim comes into existence. Ali v. Tenn. Bd. of Pardon & Paroles, 431 F.3d 896 (6th Cir. 2005), and cases cited therein.

Finally, there is serious reason to doubt whether the purpose of 2241(d)(1) – finality – applies at all to civil commitment judgments, since, as noted in State v. Hanson, 302 N.W.2d 452, 456 (Wisc., 1981), commitment "is not self-perpetuating -- it does not have the sustaining force or the finality characteristic of a normal sentence." *See also* O'Connor v. Donaldson, 422 U.S. 563, 574-75 (1975) ("Nor is it enough that Donaldson's original confinement was founded upon a constitutionally adequate basis,...because even if his involuntary confinement was initially permissible, it could not constitutionally continue after that basis no longer existed.")

But Given would still have standing for his petition even if this Court were to hold that – contrary to the plain language of G.L. c. 123A §14(d) – he is now in custody as a result of his 2004 review trial rather than because of his initial commitment. The Commonwealth cites <u>Jackson v. California Department of Mental Health</u>, 399 F.3d 1069, (9th Cir. 2005), another case brought under the California SVPA, to argue that a litigant lacks standing to challenge a term of commitment after that specific term expires. Indeed, as the Commonwealth notes, the Ninth Circuit claimed that Jackson "clearly could not rely on his expired SVPA term for standing to raise [his habeas] claim." *Id.* at 1073; Comm. Memo. at 14 (bracketed language in Commonwealth's Memo).

> But the Commonwealth ignores the very next paragraph of <u>Jackson</u>:
>
> Jackson may nonetheless have had standing if the state court's SVPA commitment order still carried with it "some concrete and continuing injury other than the now-ended incarceration." <u>Spencer [v. Kemna</u>, 523 U.S. [1,] 7 [1998]. The Supreme Court has applied this doctrine in its mootness cases, recognizing that collateral consequences may be "adequate to meet Article III's injury-in-fact requirement" to avoid mootness. Id. at 14. For instance, some disabilities that a defendant suffers because of his conviction are sufficient to keep his appeal of the conviction from becoming moot, even if his sentence expires during the appeal. See <u>North Carolina v. Rice</u>, 404 U.S. 244, 247, 30 L. Ed. 2d 413, 92 S. Ct. 402 (1971) (per curiam). There is no conceptual reason why the collateral consequences doctrine should not extend to standing in a case like Jackson's. Continuing effects of Jackson's commitment may be significant enough to satisfy the injury in fact requirement for standing, and a decision invalidating the state court's order would remedy those continuing effects.

*Id.* at 1073.[3]

The Ninth Circuit found no such collateral consequences in Jackson's case because he had volunteered for his next two-year term of commitment. *Id.* at 1074.[4]

---

[3] The omission is particularly glaring in that the Commonwealth alleges that "Given's Continued Commitment is Not Fairly Traceable to His Initial 2001 Commitment Hearing." Comm.Memo. at 12.

[4] The Court subsequently amended <u>Jackson</u> to hold:

6

In <u>Huftile v. Miccio-Fonseca</u>, 410 F.3d 1136 (9$^h$ Cir, 2005), however, the petitioner had been unwillingly recommitted under the SVPA prior to filing a *habeas* petition challenging his initial commitment. Relying on <u>Jackson</u>, the Ninth Circuit held that Huftile "still has standing to bring a federal habeas petition challenging his initial SVPA commitment even if the term of that commitment has expired." *Id.* at 1142. It explained:

> "any future petition to recommit him could be traced back, through preceding petitions, to his initial confinement" because "his initial SVPA confinement would have served as a prerequisite for a second petition, the second petition as a prerequisite for a third, and so forth."

*Id*, quoting <u>Jackson</u>, 399 F.3d at 1075. In other words, Huftile, like Given, had suffered "an 'injury in fact' that [was] (2) 'fairly traceable' to the state court's commitment order that he challenges, and (3) that is "likely [to be] redressed by a favorable decision.'" <u>Jackson</u>, 399 F.3d at 1071, citing <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.</u>, 528 U.S. 167, 180-81 (2000).

<u>Huftile's</u> reasoning would seem even more compelling in a Massachusetts case. The inquiry under G.L. c. § 9 is whether the previously committed individual "*remains* a sexually dangerous person." There can be no finding that the committed person remains

---

> Because Jackson did not demonstrate that he had standing to challenge the state court's jurisdiction to order his confinement, the district court lacked jurisdiction to consider his habeas petition. However, Jackson's failure to allege facts to support his standing may well have resulted from the fact that respondents did not contest standing in the district court. In view of Jackson's claims on appeal regarding the circumstances of his voluntary confinement..., and without deciding whether such claims are sufficient to support standing, we remand for the district court to determine, after permitting the parties to address the issue, whether Jackson has standing to bring this challenge.

<u>Jackson v. California Department of Mental Health</u>, 417 F.3d 1029 (specific page number not available) (June 8, 2005). The Ninth Circuit's amended version of Jackson makes it even more clear that expiration of the original term of commitment does not necessarily preclude *habeas* review thereof.

sexually dangerous absent the prerequisite finding that he was dangerous at his original commitment trial and at any intervening § 9 trials.

The Commonwealth thus wrongly asserts that redress is unavailable since the same inquiry would be made at a new § 9 trial as at a new initial commitment trial. At a new initial commitment trial, unlike a § 9 trial, Given would not labor under the presumption that he *has* been a sexually dangerous person.

Under either theory – that the initial commitment remains in effect, or that a subsequent commitment traces back to the prerequisite original -- this Court can clearly provide redress: Given's custody will become invalid upon this Court's finding that his original commitment was unconstitutional. At that time, the Commonwealth will have the opportunity, if it deems it appropriate, to file a new petition alleging that he is sexually dangerous today. Contrary to the Commonwealth's argument (at p. 13 n.7), it is irrelevant that there then could be no retrial of his mental status and dangerousness *nunc pro tunc* the time of his original commitment in 2001.

## Conclusion

The Commonwealth's motion is meritless and should be denied.

Respectfully submitted,

_____
DAVID HIRSCH
BBO #600915
COMMITTEE FOR PUBLIC
COUNSEL SERVICES
44 Bromfield St.
Boston, Massachusetts 02108
(617) 482-6212

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that a true copy was mailed, postage paid, to the attorney for respondent:

Scott A. Katz
Assistant Attorney General
Criminal Bureau
One Ashburton Pl.
Boston MA 02108

this 3d day of February, 2006.

David Hirsch