UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EDWARD A. GIVEN, ) | |
| ) | |
| Petitioner, ) | Civil Action No. 05-11663-NMG |
| ) | |
| v. ) | |
| ) | **THIS REPLY IS FILED WITH** |
| ROBERT MURPHY, ) | **LEAVE OF COURT, BY ORDER** |
| ) | **DATED FEBRUARY 22, 2006.** |
| Respondent. ) | |

**RESPONDENT ROBERT MURPHY'S REPLY MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS**

Respondent Robert Murphy respectfully submits this brief reply memorandum in order to address several issues raised by Petitioner Edward A. Given in his opposition to Respondent's motion to dismiss. As to those issues not further addressed herein, Respondent relies on his motion to dismiss and initial supporting memorandum.

**I. MASSACHUSETTS CASE LAW DEMONSTRATES THAT GIVEN CANNOT CHALLENGE HIS 2001 INITIAL COMMITMENT FOLLOWING HIS 2004 RE-ADJUDICATION AS A "SEXUALLY DANGEROUS PERSON."**

In his motion to dismiss, Respondent argued that Given is "in custody" for purposes of federal habeas corpus not because of the 2001 initial commitment order Given attacks in his habeas petition, but instead, because of his 2004 re-adjudication as a "sexually dangerous person" ("SDP"). In response, Given suggests that Massachusetts case law holds otherwise, that he remains "in custody" pursuant to his 2001 initial commitment order, and thus, he maintains the ability to challenge alleged trial errors made during his 2001 initial commitment hearing through a habeas petition. But the cases Given relies on are inapposite, and other case law he

ignores demonstrates precisely the opposite: that Given cannot challenge his 2001 initial commitment order following his 2004 re-adjudication as an SDP.

### A. The Massachusetts Cases Given Relies on are Easily Distinguishable.

In his opposition, Given relies principally on *Redgate, petitioner*, 417 Mass. 799 (1994) and *Dutil, petitioner*, 437 Mass. 9 (2002) to support his suggestion that he remains in custody pursuant to his initial commitment order, and can now challenge that order despite his 2004 re-adjudication as an SDP. With respect to *Redgate*, Given argues that because the Massachusetts Supreme Judicial Court ("SJC") "overturned the results of a [Mass. Gen. Laws c. 123A, § 9 discharge] trial on grounds that the original commitment was constitutionally defective," he can challenge his initial commitment order in this case. Given's Opposition at 2. But Given fails to acknowledge the unique nature of the constitutional defect present in *Redgate*. In that case, the SJC found that the classification created by the then-effective SDP statute violated equal protection principles, and as a result, the person (Redgate) was ineligible for civil commitment under the statute. *Redgate*, 417 Mass. at 803-804. Hence, unlike this case, where the constitutional errors Given alleges are <u>trial errors</u>, which could be (and were) rendered moot by a subsequent hearing, Redgate was wholly ineligible for commitment as an SDP—regardless of whether he raised the issue during his initial commitment hearing or following his re-adjudication as an SDP.

*Dutil* is similarly inapposite. There, the SJC entertained a state habeas petition filed following a person's (Dutil's) initial commitment in 1988 and subsequent re-adjudication as an SDP in 1996. Given argues that *Dutil* provides him with support because "the [SJC] could not have ruled on the merits of Dutil's petition had his original commitment been superceded . . . by subsequent [Mass. Gen. Laws c. 123A, § 9] findings that he remains sexually dangerous."

Given's Opposition at 3.  Given fails to mention, however, that the SJC <u>assumed without deciding</u> that Dutil's challenge was based on his original commitment.  *Dutil*, 437 Mass. at 13 ("Although it is unclear from his briefs and oral arguments, it <u>appears</u> that Dutil's challenge is based on his original commitment in 1988.") (emphasis added).  Indeed, the SJC expressly acknowledged that it did not need to decide whether Dutil was challenging his 1988 initial commitment or his 1996 re-adjudication as an SDP: "Even if we were to treat his petition as challenging the denial of his 1996 petition for discharge, the standard would be the same, as the 1996 petition was governed by the statute in effect at the time of the 1988 commitment."  *Id.* at 437 n.5.  In addition, as in *Redgate*, the issue entertained by the SJC in *Dutil* was not based on any alleged error at trial (as Given's habeas petition is here), but instead involved a facial challenge to Mass. Gen. Laws c. 123A on substantive due process and other grounds.  *See Dutil*, 437 Mass. at 10 (describing the issues before the SJC).  Thus, like Redgate, Dutil's ongoing commitment could not have been rendered moot by a subsequent hearing (like Given's in this case) since the issue raised was whether the Constitution permitted his commitment at all, without any regard to whether the challenge took place following an initial commitment hearing or after his re-adjudication as an SDP.  In short, because both *Redgate* and *Dutil* involved fundamental challenges to the eligibility of persons for civil commitment, rather than alleged trial errors, they do not help Given here.

**B.     Relevant Massachusetts Case Law Recognizes that Given Cannot Now Challenge His 2001 Initial Commitment.**

In contrast, Massachusetts courts have not permitted individuals to challenge alleged trial errors made at an initial commitment hearing during an appeal following re-adjudication as an SDP.  *In re McHoul*, 445 Mass. 143 (2005) is almost directly on point.  There, an individual appealing his re-adjudication as an SDP "also challenge[d] the predicate for his continued

3

commitment by claiming that there were errors (of various forms) in his original commitment." *Id.* at 157. The Supreme Judicial Court refused to entertain the arguments directed at the initial commitment, however, holding that "[a] discharge petition . . . is not the appropriate means to challenge the validity of the original commitment." *Id.* at 157-58. Hence, *McHoul* serves to demonstrate that, contrary to Given's argument, alleged trial errors made at an initial commitment hearing cannot be challenged on an appeal following re-adjudication as an SDP. Similarly, in *Davis, petitioner*, 383 Mass. 645 (1981), the SJC refused to consider "several constitutional defects" alleged in an initial commitment hearing during an appeal from the person's subsequent re-adjudication as an SDP. *Id.* at 649-50 ("We do reach these issues because they are not properly before the court."); *see also Davis v. Commonwealth*, 62 Mass. App. Ct 1104, 2004 WL 2238562 at *1 n.2 (Oct. 5, 2004) ("Arguably, the case is moot, given that the remedy the petitioner seeks—a new trial . . . —is already available to him, as [Mass. Gen. Laws c. 123A, § 9] entitles an individual held at the Treatment Center to a yearly examination of dangerousness. Nonetheless, we prescind the issue of mootness and consider the petitioner's claims, recognizing that [the issue] may arise again in a future hearing.").

    **C.**    **Given's Present Position that He Can Challenge His 2001 Initial Commitment is Inconsistent with His Prior Actions.**

Importantly, Given himself seems to have previously recognized the effect that his 2004 re-adjudication as an SDP would have on his ability to challenge the alleged trial errors at his 2001 initial commitment hearing. As noted in Respondent's opening memorandum, on March 2, 2004, Given and the Commonwealth filed a joint motion to continue the trial relating to his discharge petition pending resolution of Given's appeal of his initial commitment by the SJC. *See* Respondent's Memorandum in Support of Motion to Dismiss at 7 n.4; Declaration of Scott A. Katz, Exh. C (Joint Motion to Continue Trial). That motion was filed after oral argument had

4

been held before the SJC, but before a decision had been rendered.  Significantly, Given had prevailed before the Massachusetts Appeals Court, and the case was before the SJC on an application for further appellate review taken by the Commonwealth.  The only conceivable reason Given would have for postponing the trial is the knowledge that, if he was re-adjudicated as an SDP, it would moot the appeal of his initial commitment, and he would remain committed.  Given's present position that he is now able to challenge his initial commitment despite his 2004 re-adjudication as an SDP cannot be reconciled with his previous recognition that the re-adjudication would render moot his ability to make such a challenge.

II.     **CONTRARY TO GIVEN'S CONTENTIONS, HE LACKS ARTICLE III STANDING TO CHALLENGE HIS 2001 INITIAL COMMITMENT.**

In his motion to dismiss, Respondent also argued that Given lacks Article III standing here because he cannot demonstrate either (i) that his ongoing commitment is fairly traceable to, and thus caused by, the alleged trial errors at his 2001 initial commitment hearing; or (ii) that a favorable decision would result in his release.  In his opposition, Given fails to provide any compelling argument to support the notion that he has Article III standing.  Indeed, Given relies almost exclusively on *Huftile v. Miccio-Fonseca*, 410 F.3d 1136 (9th Cir. 2005).  In that case, the Ninth Circuit held that a lawsuit for monetary damages and declaratory relief brought under 42 U.S.C. § 1983 by a civilly committed individual (Huftile) was barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), in part because habeas relief was available to him.  *Huftile*, 410 F.3d at 1141-42.  The Ninth Circuit held that Huftile "still ha[d] standing to bring a federal habeas petition challenging his initial . . . commitment even if the term of that commitment had expired," because "the current petition to recommit Huftile is directly traceable to his initial term of commitment and is thereby sufficient to confer standing for federal habeas purposes." *Id.* at 1142.  This finding was predicated on the operation of California's Sexually Violent Predator

5

Act ("SVPA"). Under the SVPA, an initial commitment serves as a prerequisite for a petition for recommitment (termed "extended commitment" under the statute. *See id.* (citing *Jackson v. California Dep't of Mental Health*, 399 F.3d 1069 (9th Cir. 2005)).

Here, in contrast, as demonstrated above, as a matter of Massachusetts law, a challenge to an initial commitment can only invalidate a subsequent re-adjudication as an SDP where the challenge involves the person's initial <u>eligibility</u> for commitment under the statute. *See Dutil*, 437 Mass. at 10; *Redgate*, 417 Mass. at 803-04. Where, as here, a challenge is made to trial errors at the initial commitment hearing, they cannot be challenged following subsequent re-adjudication as an SDP. *See McHoul*, 445 Mass. at 157-58; *Davis, petitioner*, 383 Mass. at 649-50; *Davis v. Commonwealth*, 2004 WL 2238562 at *1 n.2. Accordingly, and as described more fully in Respondent's initial memorandum at pages 12-13, Given cannot demonstrate that his continued commitment is fairly traceable to his 2001 initial commitment hearing, or that the Court could redress his injury. In short, even if the Court were to agree that Given's initial commitment hearing suffered from constitutional defects, he would still remain committed pursuant to his 2004 re-adjudication as an SDP.

## **CONCLUSION**

For the foregoing reasons, and those stated in Respondent's opening memorandum of law, the Court should allow Respondent's motion, and dismiss Given's petition in its entirety.

Respectfully submitted,

ROBERT MURPHY,

By his attorney,

THOMAS F. REILLY
ATTORNEY GENERAL


 /s/ Scott A. Katz
Scott A. Katz (BBO # 655681)
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts  02108
(617) 727-2200, ext. 2833

Dated:  February 22, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), including David B. Hirsch, counsel for petitioner Edward A. Given in this matter.

/s/ Scott A. Katz
Scott A. Katz