United States District Court
District of Massachusetts

| | |
|---|---|
| EDWARD A. GIVEN, | ) |
| | ) |
| Petitioner, | ) |
| | ) Civil Action No. |
| v. | ) 05-11663-NMG |
| | ) |
| ROBERT MURPHY, | ) |
| | ) |
| Respondent. | ) |

MEMORANDUM & ORDER

GORTON, J.

Petitioner Edward Given ("Given") filed the instant writ of habeas corpus challenging the initial commitment hearing that adjudicated him as a Sexually Dangerous Person ("SDP"). Respondent Robert Murphy ("Murphy"), superintendent of the Massachusetts correctional institution in which Given is incarcerated, opposes that petition on jurisdictional grounds asserting that petitioner is not in custody pursuant to the order entered after his initial commitment hearing and does not have standing to challenge that proceeding. Pending before this Court is Respondent's Motion to Dismiss Petition for Writ of Habeas Corpus.

-1-

## I.    Background

### A.    The Massachusetts Sexually Dangerous Person Statute.

Massachusetts law provides that as the term of imprisonment

for any prisoner convicted of a sexual offense nears completion,

the appropriate district attorney or the Attorney General may

file a petition alleging that such prisoner is an SDP. M.G.L. c.

123A, § 12 (2006). After probable cause is determined and the

required psychiatric evaluations have been conducted, the

prisoner faces a trial to determine whether he is an SDP. M.G.L.

c. 123A, § 14 (2006). That trial is by jury unless the prisoner

waives that right. Id. If the prisoner is found to be an SDP,

then he is committed to a treatment center for a period ranging

from one day to a maximum of life. Id.

A person committed under the SDP statute shall be entitled

to file a petition for examination and discharge once every

twelve months. M.G.L. c. 123A, § 9 (2006). That petition

requires a trial, similar to the initial hearing, but, unlike

that hearing, either the prisoner or the government can request a

jury trial and the question to be answered is whether the

prisoner remains an SDP. Id.

### B.    Procedural History.

Given was convicted of indecent assault and battery on a

child under 14 in 1984 and was sentenced to probation with

counseling. See Commonwealth v. Given, 59 Mass. App. Ct. 390,

391 (2003) ("Given I") (describing Given's criminal history). In 1991, Given pled guilty to other offenses set forth in two separate indictments, one involving sexual assaults on his ten-year-old stepdaughter and nine-year-old stepson, and the other involving an eleven-year-old boy and a twelve-year-old mentally retarded girl. Id. Given was sentenced to concurrent committed sentences of nine to twelve years, which he served. Id.

Shortly before his scheduled release in November 2000, the Commonwealth of Massachusetts filed a petition to commit Given as an SDP pursuant to M.G.L. c. 123A. Id. The Commonwealth's petition was tried before a jury ("2001 Initial Commitment Hearing") and

> [a]t the conclusion of the trial, the jury rendered a special verdict finding that Given was a sexually dangerous person, and the trial judge ordered him committed to the treatment center for an indefinite period, from one day to life.

Commonwealth v. Given, 441 Mass. 741, 743 (2004) ("Given II").

Given appealed. On September 24, 2003, the Massachusetts Appeals Court reversed the judgment and set aside the jury's special verdict on the ground that certain evidence was erroneously admitted at trial. Given I, 59 Mass. App. Ct. at 393-96. The Commonwealth then sought further appellate review. On May 20, 2004, the Massachusetts Supreme Judicial Court ("the SJC") found that the trial judge committed no error, reinstated the jury's verdict and affirmed the judgment of the trial court.

-3-

Given II, 441 Mass. at 743-49.  Given then applied for a writ of
certiorari to the Supreme Court.  The Supreme Court denied
certiorari on October 18, 2004.

On November 16, 2001, while pursuing his appeal, Given filed
a petition for discharge from the treatment center under M.G.L.
c. 123A, § 9.  Given's petition was tried before a jury in
November 2004 ("2004 Discharge Hearing").  The jury returned a
verdict for the Commonwealth and Given remained classified as a
sexually dangerous person and thus remained committed.

On May 31, 2005, Given filed another petition for discharge
under M.G.L. c. 123A, § 9.  That petition remains pending in
Suffolk Superior Court.

On or about July 12, 2005, Given filed a Petition for Habeas
Corpus against Superintendent Robert Murphy.  In his petition
Given asserts two claims which he contends entitle him to habeas
relief: (1) the judgment of commitment was obtained by the
introduction of unreliable hearsay evidence in violation of the
petitioner's right to due process of law, including the right to
confront and cross examine witnesses against him and (2) the
judgment of commitment was obtained on the basis of an
unconstitutionally vague and overly broad definition of "likely
to engage in sexual offenses" in violation of his right to due
process of law.  Both claims are based on alleged trial errors
during his 2001 Initial Commitment Hearing.

-4-

On January 20, 2006, Murphy filed a Motion to Dismiss the Petition for Writ of Habeas Corpus. In that motion, Murphy did not address the merits of Given's claim but, instead, made a two-pronged attack on the jurisdictional basis for the habeas petition. First, Murphy asserts that Given is in custody by virtue of the order entered after his failed 2004 Discharge Hearing ("2004 Discharge Order") and not the order entered after his 2001 Initial Commitment Hearing ("2001 Initial Commitment Order") and, therefore, Given cannot bring a petition for habeas corpus related to the 2001 hearing. Second, even if Given is adjudged to be in custody by virtue of the 2001 Initial Commitment Order, he lacks Article III standing to bring his claim. It is that two-pronged jurisdictional attack which is currently before this Court.

## II. **Analysis**

### A. **Given is in custody pursuant to his 2001 Initial Commitment Hearing.**

A district court shall entertain a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court if it is alleged that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254 (2006). The petitioner must be in custody pursuant to the conviction or sentence under attack at the time his petition is filed. Maleng v. Cook, 490 U.S. 488 (1989).

Given filed his petition for habeas corpus on July 12, 2005,

-5-

challenging his 2001 Initial Commitment Hearing.  At that time,
the 2004 Discharge Hearing had already been held and he had been
adjudged to remain an SDP.  Murphy contends that when Given lost
his 2004 Discharge Hearing he was held in custody pursuant to the
2004 Discharge Order and was no longer in custody because of the
2001 Initial Commitment Order.  Murphy asserts that, for that
reason, Given cannot bring the instant petition for habeas corpus
challenging the original hearing.

In support of his contention, Murphy analogizes the instant
case to several California decisions.  However, the statutory
system in California is different from that in Massachusetts.  In
California, Sexually Violent Predators are to be committed for a
fixed period of two years. Cal. Welf. & Inst. Code § 6604 (2006).
In Massachusetts, the statute pertaining to SDPs provides for an
indefinite period of confinement following the initial hearing.
M.G.L. c. 123A, § 14 (2006).  Therefore, whereas subsequent
hearings in the California system may be seen as resulting in
independent committals, the same cannot be said of the
Massachusetts system.

Given supports his contention that jurisdiction is proper
with the assertion that the 2001 Initial Commitment Order
committed him to state custody indefinitely and adjudicated the
question of whether he was an SDP, whereas the 2004 Discharge
Order determined only that he remained an SDP.  Thus, Given

-6-

asserts that he is being held in custody pursuant to the 2001
Initial Commitment Order.

In support of his contention Given cites three Massachusetts
cases: In re Trimmer, 375 Mass. 588 (1978), In re Redgate,
417 Mass. 799 (1994), and In re Dutil, 437 Mass. 9 (2002).
Although all of those cases concern the SDP statutory structure
before it was amended to its present condition, the amendments do
not affect the resolution of the instant question.  In Trimmer,
the SJC explained that a discharge hearing is a "redetermination"
of whether a prisoner is sexually dangerous, but did not clearly
establish whether such a redetermination is a new commitment.
375 Mass. at 591.  In Redgate and Dutil the SJC addressed
challenges to initial commitment hearings after discharge
hearings had been held.  However, both of those cases involved
questions of whether the potential defect continued throughout
the discharge hearings, whereas in the instant case there is no
such allegation.  Therefore, the cases cited by the petitioner in
support of his theory, although intriguing, are not
determinative.

Murphy, in response, asserts that Massachusetts courts have
not permitted individuals to challenge alleged trial errors made
at an initial commitment hearing during an appeal following
readjudication as an SDP.  In support of that contention, Murphy
cites two Massachusetts cases: In re McHoul, 445 Mass. 143

-7-

(2005), and In re Davis, 383 Mass. 645 (1981). Both of those cases discuss, inter alia, the question of what issues are appropriately raised subsequent to a discharge hearing under M.G.L. c. 123A, § 9. However, neither decision actually supports the contention that a prisoner cannot challenge his initial commitment after a discharge hearing. The McHoul decision, after an exhaustive analysis of substantive issues closely analogous to the instant case, holds that a discharge hearing is not the appropriate forum for raising issues of potential defects from an initial commitment hearing. 445 Mass. at 157-58. That does not mean that there is no appropriate forum for such challenges. In Davis, the SJC suggests that M.G.L. c. 248, entitled Habeas Corpus and Personal Liberty, may be a more appropriate avenue to challenge the underlying commitment proceedings. 383 Mass. at 650. The fact that such an option is suggested by the SJC implies that it would be an appropriate avenue even when, as in Davis, a discharge hearing has already been held.

It is apparent that the 2004 Discharge Hearing was convened to determine whether Given remained an SDP. It is further apparent that, had Given prevailed in that hearing, he would no longer be in custody. However, the fact that he did not prevail does not imply that he is no longer in custody pursuant to the 2001 Initial Commitment Order. Further support is provided by the fact that another session of this Court came to the same

-8-

conclusion when faced with the same question on a motion to dismiss a writ of habeas corpus.   <u>Dutil</u> v. <u>Murphy</u>, No. 03-10925-RGS ("Order" dated March 8, 2004).

Respondent argues that finding a prisoner to be in custody pursuant to his initial commitment order would mean that he is not in custody pursuant to any subsequent order after a discharge hearing.   Therefore, the prisoner could not bring a habeas challenge after a discharge hearing and would be left without a remedy if there were errors with respect to that discharge hearing.   That argument is wanting for two reasons.   First, the prisoner may be considered to be in custody pursuant to a discharge hearing order as well as the order resulting from his initial commitment hearing.   Second, even if the prisoner is not considered to be in custody pursuant to a discharge hearing order, and is therefore unable to bring a habeas challenge to such order, the prisoner can still file a petition for discharge in accordance with M.G.L. c. 123A, § 9.   Thus, no prisoner will be left without an effective remedy in the event that there are errors in a discharge hearing.

Thus, regardless of the 2004 Discharge Hearing, Given can bring a petition for habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his 2001 Initial Commitment Hearing because he is ultimately in custody as a result of that initial hearing.

**B.    Given has Article III standing to bring his petition for habeas corpus.**

In order to have Article III standing to bring a suit a plaintiff "must demonstrate that [he] has suffered an injury in fact, that [his] injury is fairly traceable to the disputed conduct, and that the relief sought promises to redress the injury sustained." Osediacz v. City of Cranston, 414 F.3d 136, 139 (1st Cir. 2005) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).

**1.    Given has alleged an injury in fact.**

Given has alleged that, due to evidentiary and procedural errors during his 2001 Initial Commitment Hearing, he was incorrectly found to be an SDP and confined.  Thus, he has alleged an injury in fact.

**2.    Given's alleged injury is fairly traceable to the disputed conduct.**

In order to satisfy the causation requirement for Article III standing "the plaintiff must show a causal connection between the asserted injury and the challenged action of the defendant; this causal connection cannot be overly attenuated." Donahue v. City of Boston, 304 F.3d 110, 115 (1st Cir. 2002).

Because, as explained above, Given is in custody pursuant to the 2001 Initial Commitment Order, it follows that there is a causal connection between the asserted injury (his imprisonment) and the challenged action (the 2001 Initial Commitment Hearing).

-10-

That connection is not overly attenuated by the 2004 Discharge Order because the latter hearing: (1) was predicated on the 2001 Initial Commitment Order and (2) determined only whether Given remained an SDP.

### 3. Given seeks relief that promises to redress the injury sustained.

In order to satisfy the issue of redressability the petitioner must show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan, 504 U.S. at 561 (internal quotation marks omitted). That means the person seeking relief must "benefit in a tangible way from the court's intervention." Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 103 n.5 (1998) (citing Warth v. Seldin, 422 U.S. 490, 508 (1975)).

The remedy available to Given would be to grant him a new trial to readjudicate the question of whether he was an SDP in 2001. In such a hearing, the same expert testimony that was presented at that 2001 Initial Commitment Hearing, excluding any erroneously admitted evidence, could be presented. The sole question would be whether Given was an SDP in 2001. The fact that he was later found to remain an SDP at the 2004 Discharge Hearing would be irrelevant.

Respondent Murphy asserts that Given would not benefit in any tangible way from a ruling that the 2001 Initial Commitment Hearing was invalid because he would remain lawfully committed

-11-

pursuant to his 2004 Discharge Hearing. However, as Given points out, the 2001 Initial Commitment Hearing was a prerequisite for the 2004 Discharge Hearing. If there had been no 2001 Initial Commitment Hearing, or if the jury empaneled for that hearing had found in favor of Given, there would not have been a 2004 Discharge Hearing. There is a fundamental difference between the question of whether a prisoner is an SDP and whether that prisoner remains an SDP. The latter inquiry assumes that, at some earlier time, the prisoner must have been so adjudicated.

Therefore, if the 2001 Initial Commitment Hearing was wrongly decided as Given asserts, then a rehearing would be a remedy that benefits Given in a tangible way.

### ORDER

In accordance with the foregoing, Respondent's Motion to Dismiss Petition for Writ of Habeas Corpus (Docket No. 7) is **DENIED**.

**So ordered.**

Nathaniel M. Gorton
United States District Judge

Dated July 25, 2006

-12-