UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EDWARD A. GIVEN, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>ROBERT MURPHY, )<br>)<br>Respondent. )<br>) | Civil Action No. 05-11663-NMG |

**PETITIONER'S MEMORANDUM IN SUPPORT
OF PETITION FOR WRIT OF HABEAS CORPUS**

INTRODUCTION

This case is about whether Specht v. Patterson, 386 U.S. 605, 610 (1967), Mathews v. Eldridge, 424 U.S. 319 (1976), and Chambers v. Mississippi, 410 U.S. 284, 295 (1973), require that persons facing lifetime civil commitment as "sexually dangerous persons" be granted a right to confront witnesses under the due process clause commensurate with the Sixth Amendment right to confrontation as set forth in Crawford v. Washington, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). Balancing the gravity of indefinite, possibly life-time civil commitment, the risk of erroneous long-term commitment through the use of testimonial hearsay, and the probable value of cross-examination in ascertaining the truth of hearsay statements against the Commonwealth's interests in admitting such hearsay, the admission thereof in sexual offender civil commitment cases must be conditioned on granting the individual the opportunity to cross-examine. Even if Crawford is inapplicable, conclusory hearsay statements of a retarded

- 1 -

twelve year old girl relating to the alleged molestation of a young boy, which she may or may not have witnessed been a witness, do not meet minimal standards of reliability required for admission of evidence under the due process clause in a sexual offender civil commitment case. Therefore, the writ must issue.

## STANDARD OF REVIEW

This Court reviews Given's claim under the standard of review set out in 28 U.S.C. § 2254(d)(1). Given briefed and the Commonwealth of Massachusetts Appeals Court and Supreme Judicial Court decided Given's claims with reference to Crawford v. Washington, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), Specht v. Patterson, 386 U.S. 605, 610 (1967), and the 14th Amendment Due Process Clause.

## BACKGROUND

The Commonwealth filed a petition seeking petitioner Edward Given's civil commitment as a "sexually dangerous person" pursuant to Massachusetts General Laws Ch. ("G.L. c.") 123A. The case came to trial before a jury on July 10, 2001.

Without objection, the Commonwealth elicited evidence that Given had been convicted of sexually assaulting a mentally retarded twelve-year old girl, "Francine."[1] Over objection, the Commonwealth was allowed to introduce police reports concerning the incident, including allegations that Francine had told police that Given had similarly assaulted a six year-old boy at or near the same time, in the

---

[1] A pseudonym used in both the Massachusetts Appeals Court and Supreme Judicial Court opinions. The girl's actual named is blacked out in the applicable appendices.

same parked car. See summary of trial proceedings, 808 N.E.2d at 790-91.[2] This evidence was admitted[3] pursuant to G.L. c. 123A § 14(c):

> Juvenile and adult court probation records, psychiatric and psychological records and reports of the person named in the petition, including the report of any qualified examiner, as defined in section 1, and filed under this chapter, police reports relating to such person's prior sexual offenses, incident reports arising out of such person's incarceration or custody, oral or written statements prepared for and to be offered at the trial by the victims of the person who is the subject of the petition and any other evidence tending to show that such person is or is not a sexually dangerous person shall be admissible at the trial if such written information has been provided to opposing counsel reasonably in advance of trial.

The jury subsequently found beyond a reasonable doubt that Given was a "sexually dangerous" person, and the trial court committed him indefinitely to the Massachusetts Treatment Center pursuant to G.L. c. 123A § 14(d). Id.

The Massachusetts Appeals Court reversed the commitment, holding that the challenged evidence did not "'relate to' a 'prior sexual offense' of the defendant because he had not been charged, much less convicted, of any offense involving the alleged assault on the unidentified six year old boy." 796 N.E.2d at 8, citing Commonwealth v. Markvart, 437 Mass. 331, 771 N.E.2d 778 (2002).[4]

---

[2] The ruling of the Massachusetts Superior Court admitting hearsay evidence regarding Mr. Given's alleged commission of a sex crime against an unknown boy was unreported, as was the judgment finding Given a "sexually dangerous person." The opinion of the Massachusetts Appeals Court reversing Given's commitment on grounds of improper admission of hearsay is reported as Commonwealth v. Given, 59 Mass. App. Ct. 390, 796 N.E.2d 845 (2003). The ruling of the Massachusetts Supreme Judicial Court ("SJC") overturning the Appeals Court decision and reinstating Given's commitment is reported as Commonwealth v. Given, 441 Mass. 741, 808 N.E.2d 788 (2004). The order of the SJC denying Given's petition for rehearing in light of Crawford v. Washington, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), is unreported.

[3] Id. at 791

[4] In Markvart, the SJC held that "*G. L. c. 123A, § 14* (c), does not render police reports and witness statements from nol prossed cases admissible at trial. They

The Supreme Judicial Court granted the Commonwealth's application for further review.

After oral argument but before the SJC decided the case, the Supreme Court issued its ruling in Crawford v. Washington, *supra*. In accordance with Massachusetts Rule of Appellate Procedure 16(l),[5] Given filed a letter of supplemental authorities, quoting but not discussing Crawford and additional cases supporting his claim that Crawford should apply to sexually dangerous persons cases.

The SJC overruled the Appeals Court and reinstated Given's commitment on May 20, 2004, even while noting that "the admission of hearsay contained in police reports under § 14 (c) is '"a very radical departure"' from ordinary evidentiary rules." 808 N.E.2d 794, n.9.  As the Court noted, Given argued "that the admission of Francine's statement (as contained in the police report) without a an independent finding that it was reliable, violated his right to due process." Id. at 793.

In a footnote, the Court found quoted Crawford and found it inapplicable:

---

may be provided to a qualified examiner, and a qualified examiner may rely on them as the basis for an expert opinion, consistent with the requirements and limitations of Department of Youth Servs. v. A Juvenile, *supra*. Those requirements and limitations suffice to address due process concerns and the right of confrontation."  771 N.E.2d at 784. Department of Youth Servs. v. a Juvenile , 398 Mass. 516, 531, 499 N.E.2d 812 (1986) permits the expert to rely on such reports and statements only where the information therein is independently admissible.

[5] "Citation of Supplemental Authorities.  When pertinent and significant authorities come to the attention of a party after his brief has been filed, or after oral argument but before decision, a party may promptly advise the clerk of the court, by letter, with a copy to all counsel, setting forth the citations.  There shall be a reference either to the page of the brief or to a point argued orally to which the citations pertain , but the letter shall without argument state the reasons for the supplemental citations.  …"

> "To be sure, the *[Confrontation] Clause's* ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination" (emphasis added). [Crawford, 124 S.Ct.] *at 1370*.
>
> Unlike the *confrontation clause*, due process demands that evidence be reliable in substance, not that its reliability be evaluated in "a particular manner." That the focus on reliability may not accommodate a simple, predictable, bright-line rule, does not alter the fact that reliability, not cross-examination, is the "due process touchstone."

Id. at 794, n.9.

The dissenters, on the other hand, would have affirmed the Appeals Court, explaining, *inter alia*:

> Although the holding in the Crawford case is inapplicable here because the proceeding was civil rather than criminal, it is the Court's reasoning regarding the reliability of out-of-court statements that applies in this context and serves to underscore the nature of my concern about Francine's statements to police about the six year old boy. Although G. L. c. 123A proceedings are civil, we have noted that the "potential deprivation of liberty . . . 'mandates that due process protections apply.'"

*Id.* at 796, n. 1.

Given petitioned for rehearing, arguing that the due process clause created a right to confront witnesses in sexual offender commitment cases coextensive with the right to confrontation guaranteed by the Sixth Amendment. The Court denied the petition.

## ARGUMENT

I.    *Crawford v. Washington* should apply to sex offender commitment cases

Three jurisdictions have wrestled with Crawford's applicability to non-criminal cases, with mixed results. In the instant case, as noted above, the Massachusetts Supreme Judicial Court found Crawford inapplicable, albeit by a

4-3 vote. Given, *supra*. Yet in In re Civil Commitment of E.S.T., 371 N.J. Super. 562 (Aug. 9, 2004), a panel of the New Jersey Superior Court, Appellate Division, relied on the Given dissent in applying the reasoning of Crawford to cases brought under the state's Sexually Violent Predator Act. The court explained:

> Although technically civil, an SVPA commitment hearing, with its very real threat of lengthy incarceration, is almost pseudo-criminal in nature and should provide as much procedural protection to the committee as the circumstances permit.

Id. at 21, n.5.

Less than two weeks later, another panel of the same court disagreed, relying on the Given majority:

> We have found no case in any jurisdiction that has extended Crawford to a civil commitment proceeding where the burden of proof is less than beyond a reasonable doubt. The Supreme Judicial Court of Massachusetts has specifically declined to do so. Commonwealth v. Given, 441 Mass. 741, 808 N.E.2d 788, 794 n.9 (Mass. 2004)

In re Civil Commitment of G.G.N., 372 N.J. Super. 42 (Aug. 20, 2004).[6]

Finally, in United States v. Barazza, 318 F. Supp. 2d 1031, 1033 (S.D.Cal. 2004), the Southern District of California held Crawford inapplicable to a parole revocation case, holding:

> Clearly, if defendant Barraza was being prosecuted in a criminal trial, Crawford would be on all fours with the present case and would bar the admission of Blanca Barraza's statements because she has refused to testify on Fifth Amendment and marital privilege grounds (and therefore is

---

[6] On the other hand, the Court added: "Even without the explicit restriction adopted in Crawford, there is a tipping point where due process is violated by the use of hearsay." Id. The G.G.N. panel erred by citing Given as a case "where the burden of proof is less than beyond a reasonable doubt." The "beyond a reasonable doubt" standard applies to Massachusetts "Sexually Dangerous Persons" trials. G.L. c. 123A § 14(d). Further, the panel's claim not to have found cases applying Crawford outside of the "reasonable doubt" context is confusing, in that the panel quotes E.S.T. at several points in its opinion.

unavailable) and her statements were not subject to prior cross-examination. The issue, however, is whether the holding of <u>Crawford</u> applies, or should be extended, to a supervised release revocation proceeding. As set forth in detail below, the right to confrontation in a supervised release revocation hearing is a due process, not a Sixth Amendment, right. Thus, <u>Crawford</u>, a case outlining the requirements of the Sixth Amendment Confrontation Clause, is inapplicable. Moreover, there is no basis for concluding that <u>Crawford</u> overrules well-established Supreme Court case law holding that the due process right to confrontation in a revocation proceeding is limited in nature.

The Supreme Judicial Court's justification for less stringent safeguards in civil commitment proceedings is simply that the proceedings are "civil" and not "criminal." That argument should have been laid to rest following the Supreme Court's decision in <u>In re Gault</u>, *387 U.S. 1, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967)*, in which the Court found the distinction unpersuasive as an excuse for providing lesser safeguards for juveniles in delinquency proceedings than were given adults charged with violations of the criminal law.

It is axiomatic that an individual granted the right to cross-examination at a probable cause hearing should be given similar if not greater rights at trial. Under G.L. c. 123A § 12(d)(3) an individual has the statutory right to cross-examine witnesses. An analogous right to confrontation like that in <u>Crawford</u> should be given in these trials.

These cases of sexually dangerous civil commitment should be examined as Justice Scalia examined confrontation in <u>Crawford</u>. The Court should look to the common law at the time of the creation of the constitution and the relevant influential history. Under common law, civil commitment of the mentally ill was done by the government under the doctrine of *parens patria*. <u>Lessard v. Schmidt</u>,

349 F. Supp. 1078, 1084-1086 (1972). Literally, the government acted as a father. Individuals were put in the care of their families or friends. Id. The Department of Correction and District Attorneys offices are not set up to be necessarily benevolent nor could they reasonably be seen as the proxy friends or family of subject individuals. Thus, the current framework of sexually dangerous civil commitments is not consistent with those that may have existed under the common law. The civil incarceration of mentally ill people in prisons is not contemplated by the constitution, drafted to codify the best rights of the common law. See Crawford, *supra*. Under the common law the government would have used the criminal process to place people in prison. Therefore, the correct framework for these cases is criminal procedure and Crawford should apply.

II.     The SJC Failed to Consider the Nature and Extent of Due Process Protections Required under the Circumstances.

Both Barazza and E.S.T. apparently apply the principles of Mathews v. Eldridge, 424 U.S. 319, 334-35 (1976), that the extent and nature of due process depend on in large part the gravity of the consequences of the proceeding. Barazza relies on the limited nature of due process in revocation hearings, as set forth in Morrissey v. Brewer, 408 U.S. 471, 472 (1972). E.S.T. seems to follow the rule that "(f)reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." Foucha v. Arizona. 504 U.S. 71, 80 (1992).

Given, on the other hand, dismisses the applicability of Crawford merely by noting that the Confrontation Clause is "a procedural rather than a substantive

guarantee." 808 N.E.2d at 794, n.9.  It thereby ignores any consideration of the process due under Mathews.

Even without applying criminal process, the issue – one ignored by the Given majority – still remains, whether the due process clause bars the use of "testimonial" hearsay offered without the opportunity for cross-examination in sex offender commitment cases.

> As stated in Mathews:
>
> identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 325.  The Mathews criteria require rejection of testimonial hearsay in sex offender commitment cases.

> (i)   *The extent of the deprivation involved should have precluded admission of the challenged hearsay.*

Despite the centrality of personal liberty to the due process clause, different degrees and circumstances of bodily restraint demand different procedural protections.  Morrisey v. Brewer, *supra,* limits the process required in parole revocation proceedings because revocation "deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions."  408 U.S. at 480.  There are no such conditions, however, on the right to liberty once a defendant completes his/her sentence, even where the state seeks civil

commitment. "For purposes of granting judicial review before a jury of the question whether a person is mentally ill and in need of institutionalization, there is no conceivable basis for distinguishing the commitment of a person who is nearing the end of a penal term from all other civil commitments." Baxstrom v. Herold, 383 U.S. 107, 111-12 (1966).

The Supreme Court noted in Mathews that "the possible length of wrongful deprivation of...benefits [also] is an important factor in assessing the impact of official action on the private interests." 424 U.S. at 341. By reason of his commitment, Given has been deprived of the benefit of liberty. In United States v. Salerno, 481 U.S. 739, 747 (1987), the Court sustained the Federal Bail Reform Act in part because "the maximum length of pretrial detention [was] limited by the stringent time limitations of the Speedy Trial Act. On the other hand, the Court held in Humphrey v. Cady, 405 U.S. 504, 511-512 (1972), that a five-year renewal of civil commitment required more procedural protections than an original commitment limited to the maximum term an individual would otherwise have served in prison.

Most traditional civil commitment schemes are strictly limited in duration. See, e.g., G.L. c. 123 § 8.[7] But commitment under G.L. c. 123A §14(d) is, by

---

[7] "The first order of commitment of a person under this section shall be valid for a period of six months and all subsequent commitments shall be valid for a period of one year; provided that if such commitments occur at the expiration of a commitment under any other section of this chapter, other than a commitment for observation, the first order of commitment shall be valid for a period of one year; and provided further, that the first order of commitment to the Bridgewater state hospital of a person under commitment to a facility shall be valid for a period of six months. If no hearing is held before the expiration of the six months commitment, the court may not recommit the person without a hearing." Id.

statutory language, indefinite.[8] While lesser safeguards might be sufficient given the short-term nature of such traditional commitment, the possibility of lifetime confinement under G.L. c. 123A requires the further protection against error provided by the right to confront accusers.

> (ii) *Admission of the challenged hearsay created a vast risk of erroneous deprivation of Mr. Given's liberty interests.*

Few cases could better illustrate "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value…of additional or substitute procedural safeguards," Mathews, 424 U.S. at 325, than does the case at hand. The SJC held that "To determine whether the use of hearsay evidence in a civil commitment case violates due process, we need look no further than to its reliability." Given, 808 N.E.2d at 794. But based on the record, there is no basis even for concluding that Francine even saw the other alleged crime. She made conflicting statements about the alleged incident with the boy, first saying that Given "tried to molest him, too," 808 N.E.2d at 791, n.3; then that Given "did the same thing" to him, *id.* at 791, n.3, 793. When asked if she could tell the officer "something about the little boy," she responded only "Not really, I think he was 6 years old." *Id.*

---

[8] In Kansas v. Hendricks, 521 U.S. 346, 364 (1997), the Supreme Court found commitment under the Kansas Sexually Violent Predator act only "potentially indefinite" since "The maximum amount of time an individual can be incapacitated pursuant to a single judicial proceeding is one year." As noted above, however, the term of commitment under G.L. c 123A is limited only by the restrictions of Section 9 of the Statute, which entitles the individual top petition for discharge every year. The SJC has held that "[t]he one-year period, rather than serving as an automatic criterion of whether a speedy hearing was

The only details reported by the officer in his recounting of Francine's statement refer to the aftermath of the alleged incident: that the boy called his mother, his mother apparently called the boy's father, the father arrived, and the boy "ran over to his Dad's car and he was crying and he had a cut on his hand," that Mr. Given approached the car, and that "the boy's father called the police on his cellular phone in the car." Id. at 791, n.3.  Since Francine, apparently, was not in the car with the boy and his father, there is no way of determining how she decided that the boy's father called the police.

We have no way of knowing if Francine observed this other alleged crime, whether the little boy told her about it after the fact, or whether Francine merely made assumptions about it.[9]  We do not know what Francine meant by "the same thing," or whether she was more accurate when she said he "tried to molest" the boy or "did the same thing" to him.

If Francine was merely repeating the boy's story, we now have hearsay within hearsay within hearsay:  the officer's hearsay statement retelling Francine's statement, retelling, perhaps, the boy's or someone else's statement.  Such a trail of hearsay almost inevitably becomes a game of

---

provided, fixes a limitation on the number of hearings which an SDP may request." Trimmer, petitioner, 375 Mass. 588, 378 N.E.2d 59-60 (1978).
[9] The reporting officer wrote: "[Francine] was later asked about the blue windbreaker jacket which was in plain view in the rear seat of Edward Given's vehicle on the night it was impounded.  Susan then told Officer Moody that it belonged to a boy which Edward Given had in his car during the time that ["Francine"] was raped.  ["Francine"] stated to Officer Moody that Edward Given did the same things to the little boy that he had done to her." 808 N.E.2d at 797 (dissent), n.2.  Since neither Francine nor the officer testified, we cannot know whether Francine volunteered the information

"telephone," with each retelling deviating a step further from the truth. We are left with (a) a hearsay declaration (b) from a mentally retarded twelve year old, who (c) may or may not have seen the alleged incident; and (d) described the alleged incident in conclusory terms.

>   As the Appeals Court noted:
>
>   The record is clear that the police report was admitted, without limitation, for the truth of the matter stated therein, namely that the defendant had sexually assaulted a six year old boy on the same occasion that he sexually assaulted Francine. This information was available to the jury in assessing whether the defendant was a sexually dangerous person. There was no doubt about the use to which the jury were allowed to put this information because the judge specifically told the jury they could consider both charged and uncharged sexual misconduct.

796 N.E.2d at 9. The Appeals Court concluded:

>   The inadmissible hearsay supported an inference that the defendant was actively seeking victims beyond those who were known to him and enhanced a portrayal of him as a predator who was out of control and not likely to be able to control his behavior outside of a secure facility. The setting of the alleged incident was one in which he was essentially portrayed as assaulting two victims of different genders and markedly different ages more or less simultaneously, a picture that had a high potential of influencing the jury's assessment of his ability to control his future conduct.

*Id.* at 13. Clearly, admission of the challenged hearsay created a vast risk of erroneous deprivation of Mr. Given's liberty.

> (iii) *The value of cross-examination would have been incalculable.*

The Supreme Court summarized the value of cross-examination as follows in Chambers v. Mississippi, 410 U.S. 284, 295 (1973):

---

about the boy, or whether her statements about him were prompted by the officer.

> It…helps assure the "accuracy of the truth-determining process." <u>Dutton v. Evans</u>, 400 U.S. 74, 89 (1970); <u>Bruton v. United States</u>, 391 U.S. 123, 135-137 (1968). It is, indeed, "an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." <u>Pointer v. Texas</u>, 380 U.S. 400, 405 (1965). Of course, the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. E. g., <u>Mancusi v. Stubbs</u>, 408 U.S. 204 (1972). But its denial or significant diminution calls into question the ultimate "'integrity of the fact-finding process'" and requires that the competing interest be closely examined. <u>Berger v. California</u>, 393 U.S. 314, 315 (1969).

The "integrity of the fact-finding process" is at least as important in sexual offender commitment trials as in criminal proceedings. As noted above, commitment under the Statute may last as long as a criminal sentence for the most serious of felonies in Massachusetts, and the person committed will be required to give up rights beyond those denied to a criminal inmate. *See* <u>Vitek v. Jones</u>, 445 U.S. 480 (1980). In order to avoid being labeled "treatment resistant," committed sexually dangerous persons face enormous pressure to divulge "their beliefs, their thoughts, their emotions and their sensations," <u>Stanley v. Georgia</u>, 394 U.S. 557, 565 (1969), "the most comprehensive of rights and the right most valued by civilized man." *Id.* Clearly, SDP respondents have as much right to "integrity" at trial as criminal defendants do. As noted in one of the most frequently cited civil commitment cases:

> Due process likewise requires that the subject of a commitment hearing have the opportunity to be confronted with and to cross-examine the witnesses testifying in support of commitment. <u>Specht v. Patterson</u>, 386 U.S. at 610; <u>Millard v. Harris</u>, 406 F.2d at 973.

<u>Lynch v. Baxley</u>, 386 F. Supp. 378, 394 (M.D.Ala., 1974).

<u>Specht v. Patterson</u> provides what should be the final word on the subject:

> Due process, in other words, requires that [the defendant in a sexual offender commitment case] be present with counsel, have an opportunity to be heard, be confronted with witnesses against him, have the right to cross-examine, and to offer evidence of his own.
>
> ***
>
> These commitment proceedings whether denominated civil or criminal are subject both to the Equal Protection Clause of the Fourteenth Amendment as we held in Baxstrom v. Herold, 383 U.S. 107 [(1966)], and to the Due Process Clause.

386 U.S. 605, 610 (1967).

> (iv) *The Commonwealth's Interest in Presenting the Hearsay does Not Overcome Given's Right to Cross-examination.*

In a footnote, the majority of the SJC wrote:

> Police reports that include witness statements, by their nature describe an incident, including its surrounding circumstances and details, not just the bare bones elements of the crime(s) that are ultimately prosecuted. On the dissent's theory, everything is "unreliable hearsay" unless it comprises part of an element of a sexual offense for which the defendant has been convicted or pleaded guilty. See post at (Ireland, J., dissenting). Of course, experts want those surrounding details that may provide clues, going beyond the mere fact of the commission of a sexual offense, that indicate mental abnormality or future dangerousness (e.g., accompanying acts of violence or what the defendant said during the crime). Those surrounding details may include other offenses (sexual or nonsexual), either against the victim of the sexual assault or against another victim (e.g., victim's roommate not sexually assaulted, but tied up and forced to watch assault). Section 14 (c) ensures that those details are made available to the experts and fact finder alike.

808 N.E.2d 788, 793, n.5. The Commonwealth has the opportunity to introduce such "surrounding details" the usual way: by calling witnesses if it so chooses.[10]

---

[10] The court wrote: "To the extent Given desired to challenge any of the details provided by Francine and included in the report, he had both advance notice of them and the power to call Francine or others as witnesses for examination in his case." 808 N.E.2d at 795. This is burden-shifting. It was the Commonwealth's duty as the proponent to establish the reliability of the hearsay; not Mr. Given's duty to refute it. *See, e.g,* California v. Green, 399 U.S. 149, 161-62 (1970); Ohio v. Roberts, 448 U.S. 56, 65-66 (1980) (overruled in part on other grounds in Crawford).

- 15 -

But the Commonwealth has no legitimate interest in presenting "details" that are not susceptible of proof.

Undoubtedly, this will cost the Commonwealth extra time, effort, and money. But as the Supreme Court has stated regarding the burden of proof in civil commitment cases:

> The individual should not be asked to share equally with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the state.

Addington v. Texas, 441 U.S. 418, 427 (1979). The individual likewise should not be asked to share equally with society the risk of admission of erroneous testimony. Given the stakes involved, the Commonwealth cannot be permitted to introduce testimonial hearsay in sexual offender commitment cases unless the individual is accorded a right to cross-examination consistent with that provided by Crawford in criminal cases.

## Conclusion

Mr. Given's commitment must be reversed and the case remanded for new trial.

>> Respectfully submitted,
>> EDWARD GIVEN
>> By his attorney
>>
>> /s/ Michael A. Nam-Krane
>> Michael A. Nam-Krane
>> Committee for Public Counsel Services
>> BBO# 636003
>> 44 Bromfield Street
>> Boston, MA 02108
>> 617-482-6212
>> mnamkrane@publiccounsel.net

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that a true copy was mailed, postage paid to the attorney for the respondent: Scott A. Katz, Office of the Attorney General, Criminal Bureau One Ashburton Place Boston, MA 02108 this 8th day of May 2007.


/S/ Michael A. Nam-Krane
Michael A. Nam-Krane