UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————————————————— )
EDWARD A. GIVEN,                    )
                                   )
        Petitioner,                 )
                                   )
v.                                  )         Civil Action No. 05-11663-NMG
                                   )
ROBERT MURPHY,                      )
                                   )
        Respondent.                 )
———————————————————— )

**Respondent Robert Murphy's Memorandum of Law
in Opposition to Petition for Writ of Habeas Corpus**

Respondent Robert Murphy respectfully submits this memorandum of law in opposition to Petitioner Edward A. Given's petition for a writ of habeas corpus.

Given is in custody at the Massachusetts Treatment Center, having been civilly committed as a "sexually dangerous person" under Mass. Gen. Laws c. 123A. At Given's 2001 civil commitment trial, the court admitted a police report relating to Given's rape of a twelve-year-old mentally retarded girl. According to the report, the girl told police that a six-year-old boy was present when Given raped her, and that Given had attempted to molest the boy too. The girl did not testify at Given's civil commitment trial.

In his habeas petition, Given alleges that admission of the police report—without redacting the girl's allegations about the six-year-old boy—violated his right to confront the witnesses against him and/or his right to due process. In state court, the Massachusetts Supreme Judicial Court ("SJC") carefully considered Given's arguments, but ultimately rejected them.

As described more fully below, habeas relief is not warranted because: (1) the SJC's decision was not contrary to, or an unreasonable application of clearly established Supreme Court law; and (2) failing to redact the allegations about the six-year-old boy did not have a substantial, injurious effect on the jury's verdict.  Accordingly, the Court should deny the petition.

## **BACKGROUND**[1]

### I.    Facts

In July 2001, Given was adjudicated a "sexually dangerous person" under Mass. Gen. Laws c. 123A.  Tr. III/193-94.[2]  Consequently, he was ordered civilly committed for an indeterminate period ranging from one day to life.  Tr. III/195-96; *see also* Mass. Gen. Laws c. 123A, § 14(d).  Following is a brief summary of the evidence presented at Given's civil commitment trial.

In February 1984, Given was convicted of indecent assault and battery on a child under 14 after he forcibly touched the penis and buttocks of his cousin's ten-year-old son.  Tr. II/55; Supp. Ans., Exh. C at R.1, R.6-R.7.  He was given a one-year suspended

---

[1]    The information contained in this "Background" section is drawn largely from the state-court docket entries, briefs, and decisions included in Respondent Robert Murphy's Supplemental Answer (the "Supplemental Answer" or "Supp. Ans.") and the state-court trial transcripts ("Tr. __/__"), all of which were filed manually and under seal on November 15, 2006.

[2]    To establish that an individual is a "sexually dangerous person," the Commonwealth must prove beyond a reasonable doubt that the individual: (1) has been convicted of a sexual offense, as defined in the statute; and (2) suffers from a "mental abnormality" or "personality disorder"; which (3) makes him "likely to engage in sexual offenses" if not confined to a secure facility.  *Commonwealth v. Bradway*, 62 Mass. App. Ct. 280, 290, 816 N.E.2d 152, 159 (2004) (citing Mass. Gen. Laws c. 123A, § 1).

sentence with three years probation, and was required to participate in family counseling. Supp. Ans., Exh. C. at R.1.

Seven years later, in February 1991, Given pleaded guilty to nine offenses: two charges of rape of a child, five charges of indecent assault and battery on a child under 14, and two charges of indecent assault and battery on a mentally retarded person. Supp. Ans., Exh. C at R.21-R.29. Three of these convictions arose from Given's rape and repeated fondling of his ten-year-old stepdaughter and his repeated indecent touching of his nine-year-old stepson. Tr. II/56; Supp. Ans., Exh. C. at R.7-R.10. Given committed these acts over a four-month period. Supp. Ans., Exh. C at R.8.

The remaining six convictions were based on offenses Given committed while out on bail on the three charges involving his stepchildren. Tr. II/57; Tr. III/80-81. Given asked a friend if he could bring the friend's twelve-year-old mentally retarded niece ("Francine")[3] to a roller rink. Tr. II/57. On the way to the rink, Given took Francine into an empty house and put his hands down her shirt, her pants, and her underpants. Tr. II/57; Supp. Ans., Exh. C. at R.13. At the rink, Given also fondled an eleven-year-old boy by putting his hands in the boy's pockets while they played video games. Tr. II/57; Supp. Ans., Exh. C at R.11-R.12. Given then forcibly raped Francine in his car in the parking lot outside the rink. Tr. II/57; Supp. Ans., Exh. C at R.12-R.13.

For the two rape convictions and the five convictions of indecent assault and battery on a child under 14, Given was sentenced to seven concurrent nine- to twelve-

---

[3]    "Francine" is a pseudonym that was used by the state appellate courts to protect the victim's anonymity. *Commonwealth v. Given*, 441 Mass. 741, 742, 808 N.E.2d 788, 791 (2004); *Commonwealth v. Given*, 59 Mass. App. Ct. 390, 391 n.2, 796 N.E.2d 845, 846 n.2 (2003). For simplicity, Respondent will also refer to her as "Francine."

year terms of imprisonment.  Supp. Ans., Exh. C. at R.21-R.26, R.29.  For the two

convictions of indecent assault and battery on a mentally retarded person, he was given

two nine- to ten-year sentences, to be served concurrently with each other and with the

nine- to twelve-year sentences.  Supp. Ans., Exh. C at R.27-R.28.

Five witnesses testified at Given's civil commitment trial: two experts for the

Commonwealth, two experts for Given, and Given himself.  The Commonwealth's

experts opined that Given suffered from a mental abnormality (pedophilia), and that he

was likely to reoffend if not committed to a secure facility.  Tr. II/71, 122-23.  Given's

experts disagreed, stating that he was not likely to reoffend.  Tr. II/171-72; III/36-37.

## II.    The State-Court Proceedings

In November 2000, shortly before Given's scheduled release from prison on his

1991 convictions, the Commonwealth filed a petition to commit Given as a sexually

dangerous person under Mass. Gen. Laws c. 123A.  The Commonwealth's petition was

tried to a jury, and "[a]t the conclusion of the trial, the jury rendered a special verdict

finding that Given was a sexually dangerous person, and the trial judge ordered him

committed to the treatment center for an indefinite period, from one day to life."

*Commonwealth v. Given*, 441 Mass. 741, 743, 808 N.E.2d 788, 791 (2004) ("*Given II*").

On appeal, the Massachusetts Appeals Court reversed, holding that certain

evidence had been erroneously admitted at trial, and that the error was not harmless.

*Commonwealth v. Given*, 59 Mass. App. Ct. 390, 393-96, 796 N.E.2d 845, 847-50 (2003)

("*Given I*").  The Commonwealth then sought further appellate review from the SJC,

which ultimately held that the trial judge had "committed no error."  *Given II*, 441

Mass. at 743-49, 808 N.E.2d at 792-95.  Accordingly, the SJC reinstated the jury's

4

verdict and affirmed the judgment of the trial court.  *Id.* at 749, 808 N.E.2d at 795.[4]

This habeas petition followed.

## III.  Given's Habeas Petition

Given's petition includes one claim.[5]  He alleges that "[t]he judgment of commitment was obtained by the introduction of unreliable hearsay evidence in violation of the petitioner's right to due process of law, including the right to confront and cross-examine witnesses against him."  Habeas Petition, ¶ 12(A) (docket entry # 1).

At trial, the Commonwealth introduced a police report relating to Given's assaults on Francine, including her allegation that Given had raped her in his locked car.  Tr. II/58; *see also* Supp. Ans., Exh. B at R.25-R.30 (copy of excerpts of the police report).[6]  According to the police report, Francine stated that a six-year-old boy was in

---

[4]    Subsequent to the SJC's decision, Given has sought discharge from his civil commitment three times.  *See* Mass. Gen. Laws c. 123A, § 9 (providing that an individual committed as a sexually dangerous person "shall be entitled to file a petition for examination and discharge once in every twelve months").  In November 2004, a jury determined that Given remained a sexually dangerous person.  *See* Worcester Superior Court Civil Docket No. 2001-02369.  Given did not appeal.

     In June 2007, a jury again adjudicated Given as sexually dangerous, and as a result, he remains committed at the Massachusetts Treatment Center.  *See* Suffolk Superior Court Criminal Docket No. SUCR2005-10405.  Given has noticed an appeal from the judgment in his 2007 trial, *see id.*, and has filed a third petition for discharge, which is currently pending.  *See* Suffolk Superior Court Criminal Docket No. SUCR2007-10779.

[5]    Given originally included a second claim, alleging that "[t]he judgment of commitment was obtained with [an] unconstitutionally vague and overly broad definition of 'likely to engage in sexual offenses' in violation of the petitioner[']s right to due process of law."  Habeas Petition, ¶ 12(B) (docket entry # 1).  After Given failed to address the merits of this claim in his memorandum in support of his petition, counsel for Respondent conferred with Given's attorney, Michael A. Nam-Krane.  Attorney Nam-Krane confirmed that Given is not pursuing this claim, and therefore, the Court need not address it.

[6]    Although the police report is hearsay and would generally be inadmissible under standard evidentiary rules, Massachusetts law makes such reports admissible in sexually-

the car when Given raped her, and that Given had also attempted to molest the six-year-old boy. The report contains three explicit references to the six-year-old boy. The first, in narrative form, states:

> [Francine] later said that while they were in the locked car there was a 6-year-old boy inside the car also and that [Given] tried to molest him, too. The 6-year-old was standing outside waiting for his ride[,] [Francine] said. [Francine] mentioned something about the 6-year-old calling his mom and his mom calling his Dad on the cellular phone and that his Dad would be picking him up. The 6-year-old's Dad arrived and the boy ran over to his Dad's car and he was crying and had a cut on his hand. [Francine] also said that the boy[']s father had called the police on his cellular phone in the car. Then the boy and his Dad got in their car. Then [Francine] said [Given] approached the boy's father's car and the boy's father took off.

Supp. Ans., Exh. A at R.29-R.30. Next, the report also refers to the six-year-old boy in Francine's answers to a series of questions:

> [POLICE OFFICER]: Where in the car did this happen?
>
> [FRANCINE]: In the back seat, there was also a little boy in the car with us at this time and that [Given] did the same thing to the little boy.
>
> [POLICE OFFICER]: Were the seats up or down?
>
> [FRANCINE]: It was up.
>
> [POLICE OFFICER]: Can you tell me something about the little boy?
>
> [FRANCINE]: Not really, I think he was 6 years old.

---

dangerous-person cases. Mass. Gen. Laws c. 123A, § 14(c) ("[P]olice reports relating to such person's sexual offenses . . . shall be admissible at the [civil commitment] trial."). In Given's case, the SJC held that the police report was properly admitted under Massachusetts law. *Given II*, 441 Mass. at 743-46, 808 N.E.2d at 792-93 (holding that the police report relating to Given's sexual assault on Francine was admissible, without limitation, under Mass. Gen. Laws c. 123A, § 14(c)).

*Id.* at R.26.  Finally, the report also states:

> [Francine] was later asked about the blue windbreaker which was
> in plain view in the rear seat of Edward Given's vehicle on the
> night it was impounded.  [Francine] then told Officer Moody that it
> belonged to a boy which Edward Given had inside his car during
> the time that [Francine] was raped.  [Francine] stated to Officer
> Moody that Edward Given did the same things to the little boy that
> he had done to her.

*Id.* at R.25.  Given was never charged in connection with his alleged assault on the six-

year-old boy, and Francine did not testify at Given's civil commitment trial.

Given contends that the admission of Francine's allegations about the six-year-

old boy violated his Sixth Amendment right to confrontation and/or his Fourteenth

Amendment right to due process.  *See generally* Petitioner's Memorandum in Support of

Petition for Writ of Habeas Corpus ("Petitioner's Memorandum") (docket entry # 25).  In

state court, the SJC carefully considered Given's arguments, but ultimately rejected

both of them.  First, the SJC held that the Confrontation Clause only applies to

criminal cases, and therefore, had no bearing on Given's case:

> We note at the outset that [the issue Given raises] does not
> implicate Given's rights under the confrontation clause of either
> the Massachusetts or the Federal Constitution.  *See* Sixth
> Amendment to the United States Constitution ("In all criminal
> prosecutions, the accused shall enjoy the right . . . to be confronted
> with the witnesses against him . . ."); art. 12 of the Massachusetts
> Declaration of Rights ("every subject shall have a right . . . to meet
> the witnesses against him face to face").  "[P]roceedings under
> [Mass. Gen. Laws] c. 123A are civil and not penal . . . .  Hence, the
> right of confrontation secured to a defendant in criminal cases
> under art. 12 of our Declaration of Rights is not involved."
> (Citations omitted.)  *Commonwealth v. McGruder*, 348 Mass. 712,
> 716, 205 N.E.2d 726 (1965), *cert. denied*, 383 U.S. 972, 86 S.Ct.
> 1277, 16 L.Ed.2d 312 (1966).  *Accord Dutton v. Evans*, 400 U.S. 74,
> 97, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970) (Harlan, J., concurring in
> the result) ("Confrontation Clause . . . applies only to criminal
> prosecutions . . ."); *United States v. Flores*, 985 F.2d 770, 781 (5th
> Cir.1993) ("[Federal] Confrontation Clause applies only in criminal
> prosecutions and protects only the accused").

*Given II*, 441 Mass. at 746 n.8, 808 N.E.2d at 793 n.8. Next, with respect to Given's due

process argument, the SJC concluded that Francine's allegations about the six-year-old

boy were sufficiently reliable to satisfy due process:

> Given argues that the admission of Francine's statement (as contained in the police report) without an independent finding that it was reliable violated his right to due process. "While commitment proceedings under [Mass Gen. Laws c.] 123A are civil proceedings, the potential deprivation of liberty to those persons subjected to these proceedings 'mandates that due process protections apply.'" *Commonwealth v. Bruno*, 432 Mass. 489, 502, 735 N.E.2d 1222 (2000), quoting *Commonwealth v. Travis*, 372 Mass. 238, 250, 361 N.E.2d 394 (1977). However, even in proceedings that may result in a deprivation of liberty, "the due process clause does not place a per se prohibition on the use of hearsay evidence." *Commonwealth v. Durling*, 407 Mass. 108, 115, 551 N.E.2d 1193 (1990) (probation revocation hearing). To determine whether the use of hearsay evidence in a civil commitment case violates due process, we need look no further than to its reliability.[7] *See id.* at 117, 551 N.E.2d 1193. *See also*

---

[7]    Footnote 9 of the SJC's opinion, inserted at this point, states:

"We articulated the principle that reliability is the 'touchstone' for due process in *Commonwealth v. Durling*, 407 Mass. 108, 117-118, 551 N.E.2d 1193 (1990). In articulating the standards for the reliability of hearsay evidence, we adopted the United States Supreme Court's rule that 'reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception.' *Id.* at 118, 551 N.E.2d 1193, citing *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).

The *Roberts* case involved a challenge to hearsay evidence not under the due process clause, but under the confrontation clause. *Ohio v. Roberts*, *supra* at 62-63, 100 S.Ct. 2531. Recently, the Supreme Court overruled *Roberts*, replacing it with a bright-line confrontation clause rule: 'Where testimonial evidence is at issue . . . the Sixth Amendment demands . . . unavailability and a prior opportunity for cross examination.' *Crawford v. Washington*, 541 U.S. 36, —, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177, — (2004).

The *Crawford* case has no direct bearing on this case, because, as we have made clear, the confrontation clause does not apply to civil commitment proceedings. *See* note 8, *supra*. The dissent nonetheless argues that the reasoning of the *Crawford* case should guide our due process analysis in this case. *Post* at 750 n.1, 808 N.E.2d at 796 n.1. While it is true that the *Crawford* case includes language criticizing the *Roberts* reliability test as 'unpredictable,' *Crawford v. Washington*, *supra* at 1371, the reasoning of the case rests almost exclusively on the historical background of the confrontation clause and the

*Commonwealth v. Negron*, 441 Mass. 685, 690, 808 N.E.2d 294 (2004).

"Evidence which would be admissible under standard evidentiary rules is presumptively reliable." *Commonwealth v. Durling*, *supra* at 118, 551 N.E.2d 1193. However, as we have stated, the admission of hearsay contained in police reports under § 14(c) is "'a very radical departure' from ordinary evidentiary rules." *Andrews, petitioner*, *supra*, quoting *Commonwealth v. McGruder*, *supra*. This statutory departure is justified, however, where the proffered report relates to an offense of which the defendant has been convicted.   The fact of conviction is a powerful independent indicator of the reliability of the statements describing the offense on which the conviction rests. In this case, while the fact that Francine, a child suffering from mental retardation, made her statement to police shortly after the traumatic experience of two sexual assaults might cast some doubt on its reliability, Given pleaded guilty to these very assaults.

Insofar as Francine's statement concerning the six year old boy was part of her detailed description of the circumstances of Given's sexual assaults on her, its reliability is similarly bolstered by Given's plea. This is so even though his plea may not have contained an admission to any of the specific facts as described by Francine.[8]   Without Given's plea, Francine's statement would be

---

particular concerns motivating its ratification, *id.* at 1359-1367.  The Court summarized its historical analysis by stating:

'To be sure, the [Confrontation] Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee.  It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination' (emphasis added [by the SJC]).  *Id.* at 1370.

Unlike the confrontation clause, due process demands that evidence be reliable in substance, not that its reliability be evaluated in 'a particular manner.'  That the focus on reliability may not accommodate a simple, predictable, bright-line rule does not alter the fact that reliability, not cross-examination, is the 'due process touchstone.'  *Commonwealth v. Durling*, *supra* at 117, 551 N.E.2d 1193."

[8]     Footnote 10 of the SJC's opinion, inserted at this point, states: "Applying '[p]rinciples similar to collateral estoppel,' the dissent claims that the effect of Given's guilty plea extended only 'to that portion of [Francine's] statement concerning the facts necessary to support a conviction.'  *Post* at 751, 808 N.E.2d at 797.  To the contrary, basic concepts of corroboration—not collateral estoppel—are what endow Francine's statement with

merely an unproven allegation; with the plea, her statement is part of a set of facts that formed the basis for the charges to which Given pleaded guilty.  *Cf. Commonwealth v. Jackson*, 428 Mass. 455, 459-460, 702 N.E.2d 1158 (1998) (guilty plea bolstered statement concerning precise factual circumstances of crime, providing sufficient indicia of reliability to justify admitting alleged factual circumstances of crime as modus operandi evidence).  To the extent Given desired to challenge any of the details provided by Francine and included in the report, he had both advance notice of them and the power to call Francine or others as witnesses for examination in his case.  [Mass. Gen. Laws] c. 123A, § 14(c) (police reports admissible only if "provided to opposing counsel reasonably in advance of trial").  [Mass. Gen. Laws] c. 123A, § 14(b) ("person named in the petition shall be entitled to have process issued from the court to compel the attendance of witnesses on his behalf").  The admission of the unredacted police report containing Francine's statements did not offend due process.[9]

*Given II*, 441 Mass. at 746-48, 808 N.E.2d at 793-95.

## <u>ARGUMENT</u>

## I.    This Court's Review of Given's Claim is Limited and Highly Deferential.

Given filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), and therefore, his claim is governed by AEDPA's highly deferential standard of review.  *Rashad v. Walsh*, 300 F.3d 27, 34 (1st Cir. 2002) (citing *Lindh v. Murphy*, 521 U.S. 320, 336 (1997)).  Under AEDPA, a federal court may

---

reliability.  Given's guilty plea confirms the central part of Francine's statement, therefore lending credibility to the statement as a whole, including the parts of her statement not directly corroborated by his plea."

[9]    Footnote 11 of the SJC's opinion, inserted at this point, states: "The hearsay contained in the police report was also not the only evidence admitted against Given at trial.  *See Commonwealth v. Durling, supra* at 118, 551 N.E.2d 1193.  The Commonwealth presented evidence of ten convictions of crimes involving sexual assaults on five different children, as well as the testimony of two qualified examiners, both of whom concluded that Given was sexually dangerous."

not grant a writ of habeas corpus on a claim that was "adjudicated on the merits" in a state-court proceeding unless the state-court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

This provision constrains federal courts' ability to grant habeas relief in two significant ways. First, it restricts the source of the rule of decision in habeas cases. In particular, the rule of decision must come from a Supreme Court case (or cases) decided <u>before</u> the relevant state-court decision. *See* 28 U.S.C. § 2254(d)(1); *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004); *Williams v. Taylor*, 529 U.S. 362, 412 (2000). And equally important, the rule relied on by the petitioner must be "clearly established Federal law," meaning that it must be a holding (*i.e.*, <u>not</u> dicta) drawn from the Court's decisions. *Yarborough*, 541 U.S. at 660-61; *Williams*, 529 U.S. at 412; *see also Carey v. Musladin*, 127 S. Ct. 649, 653 (2006).

Next, as the statutory language makes plain, AEDPA also requires that federal courts use a "highly deferential standard for evaluating state-court rulings, [and] demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 23 (2002) (*per curiam*) (citation omitted). More specifically, habeas relief may not be granted unless the state-court decision at issue is either "contrary to" or "involved an unreasonable application of" clearly established Supreme Court law.

## A.    The "contrary to" prong

The "contrary to" prong "embraces cases in which a state court decision directly contravenes Supreme Court precedent." *Williams v. Matesanz,* 230 F. 3d 421, 424 (1st

Cir. 2000).  A state-court decision is "contrary to" the Supreme Court's clearly established precedents if it either applies a rule that contradicts the governing law set forth in the Court's cases, or resolves a case differently from the Court on a set of materially indistinguishable facts.  *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam*) (quoting *Williams*, 529 U.S. at 405).  Under either scenario, in order for a state-court decision to be "contrary to" the Supreme Court's clearly established law, the decision must be "substantially different," "diametrically different," "opposite in character or nature," or "mutually opposed" to clearly established Supreme Court law.  *Williams*, 529 U.S. at 405.  Relief under the "contrary to" prong requires identification of controlling Supreme Court precedent and a ruling that the identified precedent demands a particular outcome—*i.e.*, one contrary to that reached by the state court. *See Williams*, 230 F. 3d at 425; *O'Brien v. Dubois*, 145 F.3d 16, 26 (1st Cir. 1998).  The key inquiry is whether the relevant Supreme Court decision "can fairly be said to require a particular result in a particular case."  *O'Brien*, 145 F.3d at 25 (emphasis added).

**B.    The "unreasonable application of" prong**

A state-court decision "involve[s] an unreasonable application of" the Supreme Court's clearly established precedents if the state court identifies the correct governing legal principle from the Court's decisions, but applies it in an objectively unreasonable manner.  *See Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003) (citing *Williams*, 529 U.S. at 409).  Importantly, "[a]n unreasonable application of federal law is different from an incorrect application of federal law."  *Williams*, 529 U.S. at 410 (emphasis in original). Indeed, in order for habeas relief to be appropriate under the "unreasonable

application" prong, a state-court decision must be "more than incorrect or erroneous."

*Lockyer*, 538 U.S. at 75 ("It is not enough that a federal habeas court, in its independent

review of the legal question, is left with a firm conviction that the state court was

erroneous.") (citations and internal quotation marks omitted). The requisite

demonstration is a "daunting task for a habeas petitioner to show," because if it is even

"a close question whether the state decision is in error, then the state decision cannot

be an unreasonable application." *Healy v. Spencer*, 453 F.3d 21, 26-27 (1st Cir. 2006)

(quoting *McCambridge v. Hall*, 303 F.3d 24, 36 (1st Cir. 2002) (en banc)). Finally, an

evaluation of a state court's judgment under the "unreasonable application" prong also

depends in large part on the nature of the relevant rule:

> If a legal rule is specific, the range may be narrow. Applications of
> the rule may be plainly correct or incorrect. Other rules are more
> general, and their meaning must emerge in application over the
> course of time. Applying a general standard to a specific case can
> demand a substantial element of judgment. As a result, evaluating
> whether a rule application was unreasonable requires considering
> the rule's specificity. <u>The more general the rule, the more leeway
> courts have in reaching outcomes in case by case determinations</u>.

*Yarborough*, 541 U.S. at 663 (emphasis added); *Locke v. Cattell*, 476 F.3d 46, 51 (1st

Cir. 2007) (citing *Yarborough* and observing that "where the legal rule is general,"

"state courts have substantial leeway in reaching a reasonable decision").

## II.    The SJC's Rejection of Given's Confrontation Clause Argument was Not Contrary to, or an Unreasonable Application of Clearly Established Supreme Court Law.

Relying on *Crawford v. Washington*, 541 U.S. 36 (2004), Given first argues that

admission of the police report—without redacting Francine's allegations about the six-

year-old boy—violated his rights under the Sixth Amendment's Confrontation Clause.

Petitioner's Memorandum at 5-8. As noted, the SJC rejected Given's argument because

proceedings under Mass. Gen. Laws c. 123A are civil in nature, and therefore, the Confrontation Clause does not apply. *Given II*, 441 Mass. at 746 n.8, 808 N.E.2d at 793 n.8. The SJC's conclusion was not contrary to, or an unreasonable application of clearly established Supreme Court law.

By its own terms, the Sixth Amendment only applies to criminal cases. *See* U.S. Const., amend. vi ("In all <u>criminal prosecutions</u>, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . .") (emphasis added). Given does not identify any Supreme Court case—and indeed, there is none—holding that the right to confrontation recognized in *Crawford* applies in any context aside from a criminal trial. *See United States v. Rondeau*, 430 F.3d 44, 47 (1st Cir. 2005) ("Nothing in *Crawford* indicates that the Supreme Court intended to extend the Confrontation Clause's reach beyond the criminal prosecution context."); *Carty v. Nelson*, 426 F.3d 1064, 1073 (9th Cir. 2005) (rejecting habeas petitioner's Confrontation Clause claim "because the commitment proceedings under [California's Sexually Violent Predator Act] are civil, not criminal").[10]

---

[10]    Citing *In re Gault*, 387 U.S. 1 (1967), Given contends that the Supreme Court has already "laid to rest" the argument that the Confrontation Clause does not apply in civil proceedings. Petitioner's Memorandum at 7. Given's reliance on *Gault* is misplaced. In that case, the Supreme Court merely held that the same constitutional safeguards applicable at criminal trials apply with equal force in juvenile delinquency proceedings, even though some states deemed delinquency proceedings "civil": "[J]uvenile proceedings to determine 'delinquency,' which may lead to commitment to a state institution, must be regarded as 'criminal' . . . . To hold otherwise would be to disregard substance because of the feeble enticement of the 'civil' label-of-convenience which has been attached to juvenile proceedings." *Gault*, 387 U.S. at 49-50. In contrast, as the Supreme Court has recognized subsequent to *Gault*, commitment proceedings based on an individual's sexual dangerousness are civil in substance, unlike the delinquency proceedings at issue in *Gault*. *See Kansas v. Hendricks*, 521 U.S. 346, 361 (1997) ("We are unpersuaded by [the] argument that [Kansas's Sexually Violent Predator Act] has established criminal proceedings."); *Allen*

Recognizing the Confrontation Clause's limited scope, the First Circuit has held that the right to confrontation recognized in *Crawford* does not apply even in non-trial <u>criminal</u> proceedings.  *Rondeau*, 430 F.3d at 47-48 (holding that *Crawford* does not apply to supervised release revocation hearings); *United States v. Luciano*, 414 F.3d 174, 178-79 (1st Cir. 2005) (holding that *Crawford* does not apply at sentencing hearings).  Put simply, there is no clearly established Supreme Court law establishing a *Crawford*-like right of confrontation in civil commitment cases.  *See Carty*, 426 F.3d at 1073.  Accordingly, Given's Confrontation Clause argument necessarily fails.  *See Carey*, 127 S. Ct. at 654 (recognizing that AEDPA bars relief where there is a "lack of holdings" from the Supreme Court supporting a petitioner's claims).

## III.   The SJC's Rejection of Given's Due Process Argument was Not Contrary to, or an Unreasonable Application of Clearly Established Supreme Court Law.

Next, Given argues that the failure to redact Francine's allegations about the six-year-old boy violated his due process rights.  Petitioner's Memorandum at 8-16.  Again, the SJC's conclusion was not contrary to, or an unreasonable application of clearly established Supreme Court law.

The Supreme Court has suggested that due process requires a limited right of confrontation in non-criminal proceedings that deprive a person of his liberty.  *See, e.g.*, *Vitek v. Jones*, 445 U.S. 480, 494-96 (1979) (recognizing in case involving transfer of

---

*v. Illinois*, 478 U.S. 364, 372-73 (1986) (holding that Illinois's Sexually Violent Persons Act was civil, and distinguishing *Gault* because in *Gault*, the state "intended to <u>punish</u> its juvenile offenders") (emphasis added); *see also Commonwealth v. Bruno*, 432 Mass. 489, 499-502, 735 N.E.2d 1222, 1230-32 (2000) (relying on *Hendricks* in holding that civil commitment under Mass. Gen. Laws c. 123A did not violate the Ex Post Facto Clause because it was civil, not criminal, in nature).

prisoner to mental hospital, that prisoner was entitled to hearing at which he could "confront and cross-examine witnesses called by the state, except upon a finding, not arbitrarily made, of good cause for not permitting such presentation, confrontation, or cross-examination"); *Morrissey v. Brewer*, 408 U.S. 471, 489 (1973) (recognizing that at parole revocation hearing, parolee has "the right to confront and cross-examine adverse witnesses unless the hearing officer specifically finds good cause for not allowing confrontation") (parentheses omitted). But any such right to confrontation is not absolute; as the SJC correctly recognized, "the due process clause does not place a *per se* prohibition on the use of hearsay evidence." *Given II,* 441 Mass. at 746, 808 N.E.2d at 794 (quoting *Commonwealth v. Durling*, 408 Mass. 108, 115, 551 N.E.2d 1193 (1990)). Instead, due process is satisfied if the evidence at issue is sufficiently reliable and "bears substantial guarantees of trustworthiness." *United States v. Kelley*, 446 F.3d 688, 692-93 (7th Cir. 2006) (holding that admission of hearsay at revocation hearing did not violate due process); *United States v. Brewster*, 127 F.3d 22, 28 (1st Cir. 1997) (noting that due process permits sentencing courts "to embrace divers kinds of information, <u>even hearsay evidence that has never been subjected to cross-examination</u>" as long as the evidence is reliable) (emphasis added); *see also Morrissey*, 408 U.S. at 489 (noting that a revocation court may consider "material that would not be admissible in an adversary criminal trial").

Here, as described above, the SJC acknowledged that "[t]o determine whether use of hearsay evidence in a civil commitment case violates due process, [it] need look no further than to its reliability." *Given II*, 441 Mass. at 746-47, 808 N.E.2d at 794. Applying this standard, the SJC held that Given's conviction was "a powerful indicator

of the reliability of [Francine's] statements describing the offense on which the conviction rest[ed]." *Id.* at 748-49, 808 N.E.2d at 794. Even more importantly, the SJC emphasized, Given had pleaded guilty to the conduct Francine had alleged, bolstering the reliability of her account. To be sure, as the SJC acknowledged, Given's "plea may not have contained an admission as to any of the specific facts as described by Francine." *Id.* But his admission of guilt "confirm[ed] the central part of Francine's statement, therefore lending credibility to the statement as a whole, including the parts of her statement not directly corroborated by his plea." *Id.* at 748 & n.10, 808 N.E.2d at 794-95 & n.10. Thus, the SJC concluded, Francine's entire statement—including her allegations about the six-year-old boy—were sufficiently reliable to satisfy due process. *Id.* at 748, 808 N.E.2d at 795.

Finally, as the SJC noted, "[t]o the extent Given desired to challenge any details provided by Francine and included in the report, he had both advance notice of them and the power to call Francine or others as witnesses for examination in his case." *Given II*, 441 Mass. at 748, 808 N.E.2d at 795. *See United States v. Miller*, 450 F.3d 270, 274 (7th Cir. 2006) (holding due process not violated in admitting hearsay at sentencing hearing in part because the defendant "was free to call [the declarant] to the stand . . . if he wanted to pursue this subject, but he chose not to do so").

As noted, where the governing rule is so general—as is the "reliability" standard applicable here—state courts "have [more leeway] in reaching outcomes in [their] case by case determinations." *Yarborough*, 541 U.S. at 663. In this case, especially given the "leeway" afforded to the SJC, its rejection of Given's due process argument cannot fairly be characterized as objectively unreasonable. In short, the rule the SJC applied

was not contrary to Supreme Court precedent, and its conclusion was not objectively

unreasonable.  Accordingly, Given's due process argument fails.

## IV.   Admission of Francine's Allegations About the Six-Year-Old Boy Did Not Have a Substantial, Injurious Effect on the Jury's Verdict.

Finally, even if the SJC's decision had been contrary to, or an unreasonable

application of clearly established Supreme Court law (it was not), habeas relief still

would not be warranted because Francine's allegations about the six-year-old boy did

not have a substantial, injurious effect on the jury's verdict.

"A federal habeas court is bound to uphold a state court judgment as long as the

error did not have a 'substantial, injurious effect on the jury's verdict.'" *Petrillo v.

O'Neill*, 428 F.3d 41, 44-45 (1st Cir. 2005) (applying the substantial-and-injurious-effect

standard established in *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)); *Medina v.

Matesanz*, 298 F.3d 98, 101 (1st Cir. 2002); *Sanna v. DiPaolo*, 265 F.3d 1, 14 (1st Cir.

2001).[11]  Here, admitting the police report without redacting Francine's allegations

about the six-year-old boy did not have a substantial, injurious effect on the jury's

verdict for two reasons.

First, as Given fails to acknowledge, there was <u>no</u> testimony about the six-year-

old boy at trial: neither of the Commonwealth's experts relied on this evidence in

---

[11]    In contrast, "[o]n direct appeal, a state court confronted by a preserved constitutional error must set aside the judgment unless it is satisfied that the error was harmless beyond a reasonable doubt."  *Sanna*, 265 F.3d at 14 (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)).  Notably, the *Brecht* standard, which is more favorable to the state than the *Chapman* standard, applies regardless of whether the state court reviewed the alleged error for harmlessness under the *Chapman* "harmless-beyond-a-reasonable-doubt" standard.  *Fry v. Pliler*, 127 S. Ct. 2321, 2328 (2007).

opining that Given was likely to reoffend; indeed, neither expert even mentioned the six-year-old boy during their testimony.[12]  Similarly, the Assistant District Attorney did not refer to the six-year-old boy during his opening statement or his closing argument. Tr. II/32-40; III/150-60.  In other words, while there were references to the six-year-old boy in several trial exhibits—*i.e.*, the police report and the experts' written reports— this evidence was never specifically or directly called to the jury's attention.[13]

Next, there was substantial evidence supporting the jury's verdict.  To establish that Given was a "sexually dangerous person," the Commonwealth was required to prove that he: (1) had been convicted of a sexual offense, as defined in the statute; and (2) suffered from a "mental abnormality" or "personality disorder"; which (3) made him "likely to engage in sexual offenses" if not confined to a secure facility.  *Commonwealth v. Bradway*, 62 Mass. App. Ct. 280, 290, 816 N.E.2d 152, 159 (2004) (citing Mass. Gen. Laws c. 123A, § 1).  Here, the Commonwealth's experts identified a number of factors demonstrating Given's pedophilia and/or his high risk of reoffense:

- Given had been convicted of ten offenses against five different children, Tr. II/55-57, 117;

---

[12]     Although both experts noted this information in their written reports, Supp. Ans., Exh. C at 12-13, 40, neither of them referred to it in their written conclusions that Given was a sexually dangerous person.  *Id.* at 18-20, 44-47.

[13]     To be sure, it is possible that jurors could have learned of Francine's allegations about the six-year-old boy by examining the trial exhibits during their deliberations. Respondent notes, however, that there were 21 exhibits, Tr. II/2 (listing exhibits), and the jury deliberated for just 70 minutes.  Tr. III/182, 193 (indicating that jury began deliberations at 2:40 p.m. and returned its verdict at 3:50 p.m.).  Accordingly, it is equally likely—if not more likely—that the jury was entirely unaware of the evidence relating to the six-year-old boy.  In any event, the evidence was not mentioned—let alone emphasized—at Given's trial.

- Given's victims included both male and female children, some of whom were related to him and some of whom were not, Tr. II/117, 121-22;

- Given had previously reoffended: he committed his 1991 offenses several years after being placed on probation (and receiving some counseling) for his 1984 offense, Tr. II/118;

- Given committed several of his offenses—his rape of Francine and molestation of the eleven-year-old boy at the roller rink—while out on bail awaiting trial for the crimes involving his stepchildren, Tr. II/118;

- Given's offenses had become more serious over time, escalating from digital penetration to the forced penile-vaginal rape of a retarded child, during which he used violence, Tr. II/118;

- Given denied raping Francine, even though he had previously pleaded guilty to doing so, Tr. II/70; and

- Given declined to participate in a structured sexual offender treatment program offered in prison, and as a result, did not "understand his pedophilia . . . because he [sought] not to understand it," Tr. II/113, 122-23.

In light of the substantial evidence that Given suffered from pedophilia and was likely to reoffend, the effect, if any, of failing to redact Francine's allegations about the six-year-old boy was minimal. It did not have a substantial, injurious effect on the jury's verdict.

## **CONCLUSION**

For the foregoing reasons, the Court should deny the petition for a writ of habeas corpus.

Respectfully submitted,

ROBERT MURPHY,

By his attorney,

MARTHA COAKLEY
ATTORNEY GENERAL

/s/ Scott A. Katz
Scott A. Katz (BBO # 655681)
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts  02108
(617) 727-2200, ext. 2833

Dated:  September 12, 2007

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, including Michael A. Nam-Krane, counsel for Petitioner Edward A. Given in this matter.

/s/ Scott A. Katz
Scott A. Katz